944 So.2d 703 (2006)
The NEWMAN MARCHIVE PARTNERSHIP, INC., Plaintiff-Appellee,
v.
CITY OF SHREVEPORT, Defendant-Appellant.
No. 41,460-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2006.
Opinion Amending Judgment on Rehearing December 8, 2006.
*705 Weems, Schimpf, Harris, Landry & Carmouche, by Brian D. Landry, Carey T. Schimpf, Kenneth P. Haines, Shreveport, for Appellant.
Wiener, Weiss & Madison, by John M. Madison, Jr., M. Allyn Stroud, Shreveport, for Appellee.
Before STEWART, DREW and MOORE, JJ. STEWART, CARAWAY, DREW, MOORE and SEXTON (Pro Tempore), JJ.
STEWART, J.
This matter arises from a breach of contract suit by The Newman Marchive Partnership, Inc., ("TNMP"), against the City of Shreveport (the "City"). TNMP provided architectural services related to the development of a "Campus Plan" for the city government facilities. The trial court awarded TNMP additional fees and termination expenses totaling $476,146.89. Both parties have appealed the judgment. For the following reasons, we amend the trial court's judgment to reduce the award to $414,200.45. Also, we remand the matter *706 for the trial court to assess costs against the City in accordance with La. R.S. 13:5112.

FACTS
In August 1994, the City advertised for architectural services for a Campus Plan for the city government facilities located at 1234 Texas Street. After the City's Architectural Selection Committee reviewed proposals by three applicants, it selected The Newman Partnership, Inc., now TNMP, as the architect for the project.[1] Although the Campus Plan was to involve multiple projects, the parties entered only one agreement for the entirety of the work. Mayor Hazel Beard and Michael Newman, president of TNMP, executed a written contract on September 12, 1994, using the American Institute of Architects' B141 Standard Form of Agreement Between Owner and Architect, 1987 Edition.
The contract identifies the project as "Additions and Renovations to City Hall facilities." Paragraph 12.4.1 of the contract explains the project as follows:
The project will provide for new buildings, renovations and additions to the existing City facilities located at and adjacent to 1234 Texas Avenue, and adjacent and surrounding properties as may be acquired by the City. The purpose of the project is to provide for facilities for the physical space needs of all the various departments of the City.
Paragraph 12.4.2 describes the services to be provided by TNMP as "programming, site selection consultation, master planning, comprehensive architectural services, . . . and extended construction contract services." Under the contract, the architect's services are considered either basic or additional. Basic services are comprised of the following five phases of the project  schematic design phase, design development phase, construction documents phase, bidding or negotiation phase, and construction phase (contract administration). The fee for basic services is a fixed percentage of the construction cost  eight percent for new buildings and ten percent for renovations. A percentage of the fee is charged at each phase of the project. Additional services are charged as either a percentage fee or an hourly rate depending on the particular service.
Upon confection of the contract, TNMP provided services to the City under three administrations, those of Mayors Beard, Bo Williams, and Keith Hightower. By letter dated July 17, 2000, the City terminated its contract with TNMP. Paragraph 8.7 of the contract provides for payment of termination expenses in the event of termination not the fault of the architect.
On September 19, 2003, TNMP filed suit against the City for breach of contract. TNMP sought damages totaling $1,243,339.23 for payments owed for services, reimbursable expenses, termination expenses, and loss of profits. TNMP amended its petition twice, dropping its claim for loss of profits and otherwise reducing its demand to $793,948.20.[2] A bench trial ensued, after which the trial court rendered written reasons for judgment that thoroughly addressed the issues and claims presented at trial. The trial *707 court's judgment awarded TNMP the amount of $476,146.89, plus legal interest, and divided costs between the parties by assessing seventy-five percent to the City and twenty-five percent to TNMP. Both parties appealed.
The City asserts that the trial court erred in finding TNMP entitled to the following:
1. Basic services fee for redesign of the police building.
2. Basic services fee for renovation of the engineering and customer service building.
3. Basic services fee for design of the court plaza.
4. Additional services fee for delays in construction of the court building and central energy plant.
5. Additional services fees for work on punch list items.
6. Termination expenses.
TNMP answered the appeal to assert error in the trial court's denial of its claims for the following:
1. Basic services fee for design of a proposed new police building.
2. Basic services project management fee for the proposed new police building.
3. Basic services fee for governmental center signage.
4. Additional services fee for a master plan cost comparison.
5. Additional services fee for a campus plan energy study.
TNMP also argues that the trial court erred in failing to assess all costs of the trial court proceedings to the City.

DISCUSSION
Applicable Law
Contracts are the law between the parties and must be performed in good faith. La. C.C. art.1983. Interpretation of a contract requires determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation is needed to determine the parties' intent. La. C.C. art.2046. Each provision in the contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art.2050. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after formation of the contract, and of other contracts of a like nature between the parties. La. C.C. art.2053. In cases of doubt, contracts executed in a standard form of one party must be interpreted in favor of the other party. La. C.C. art. 2056. However, if doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party, whether obligee or obligor. La. C.C. art.2057. See also Total Minatome Corporation v. Union Texas Products Corp., 33,433 (La.App.2d Cir.8/23/2000), 766 So.2d 685.
Factual findings pertinent to interpretation of a contract are not to be disturbed in the absence of manifest error. The Newman Marchive Partnership, Inc., supra; Mount Mariah Bapist Church v. Pannell's Associated Electric, Inc., 36,361 (La.App.2d Cir.12/20/02), 835 So.2d 880, writ denied, 03-0555 (La.05/02/03), 842 So.2d 1101. The duty of the reviewing court is not to determine whether the trial court was right or wrong, but whether the trial court's conclusion was a reasonable one based on the entirety of the record. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). Reasonable evaluations *708 of credibility and inferences of fact should not be disturbed where conflict exists in the testimony. Id. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. Id.
The City's Assignments of Error

Basic Services Fee for Redesign of the Police Building
Although the Campus Plan initially called for construction of a new police building, the Hightower administration opted to move the city hall offices to downtown Shreveport and renovate the old city hall building for use by the police. The budget for the project was $2,250,000; therefore TNMP's ten percent basic services fee was $225,000. However, the parties agreed that TNMP would not provide contract administration services for the project, thus TNMP deducted twenty percent of the fee that would be attributable to such services. TNMP further agreed to credit the City $19,200 for not having to design the jail stair and jail locks, which had already been done as part of their work in connection with the former plans for a new police building. The credit is shown in the invoice of January 14, 2000. TNMP's invoices from June 1999 through March 2000 were based on the estimated construction cost. The City paid fees totaling $162,289.64.
Upon filing suit, TNMP recalculated the fees based on the final construction cost of $2,965,512.60. The ten percent fee was $296,512.60, and this amount was reduced by the twenty percent deduction for construction administration ($59,302.50), leaving a total fee owed by the City of $237,210.08. TNMP contended that it was owed $74,920.44, the difference between the full amount owed and the $162,289.64 previously paid by the City. The trial court agreed and awarded the full amount of TNMP's claim.
The City contends the recalculation of fees does not take into account the credit of $19,200. We agree. While TNMP's invoice of January 14, 2000 shows that the credit was taken into consideration in billing for the work done in a particular phase of the project, this credit was not taken into consideration in recalculating fees based on the final construction cost. TNMP's recalculation of fees for this project does not give the City the benefit of the credit agreed to by the parties. Rather, under TNMP's recalculation, it collects its full fee minus only the twenty percent deduction for the construction administration phase it did not perform. We find that TNMP's recalculation of fees should have also included the credit of $19,200. The application of this credit results in the City owing TNMP a balance of $55,720.44 ($74,920.44-$19,200), and we amend the trial court's judgment accordingly.

Basic Services Fee for Renovation of the Engineering/CSB Building
This claim dates back to 1997, when TNMP completed preliminary designs for renovations to what is referred to as the old annex building. After TNMP completed thirty-five percent of the architectural work through design development, the project was postponed. TNMP did nothing further and did not invoice the City for its work. The City later completed renovations after terminating its contract with TNMP. At trial, TNMP claimed that the City owed a fee of $69,492.50 (thirty-five percent of a ten percent fee) based on a budgeted construction cost of $1,985,500 for renovation of the entire building.
The City asserts that this claim should have been denied. The City argues the work was never part of the Campus Plan, a budget for the project was never approved, *709 and TNMP was never authorized to proceed with the renovation. If a fee is owed, the City contends that it should be based on the construction cost for renovations of only the top two floors.
Paragraph 10.3.4 of the contract provides:
When compensation is based on a percentage of Construction Cost and any portions of the Project are deleted or otherwise not constructed, compensation for those portions of the Project shall be payable to the extent services are performed on those portions, in accordance with the schedule set forth in Subparagraph 11.2.2, based on (1) the lowest bona fide bid or negotiated proposal, or (2) if no such bid or proposal is received, the most recent preliminary estimate of Construction Cost or detailed estimate of Construction Cost for such portions of the Project.
The exhibits in evidence show that renovation of this entire building was included in the master plans for the project presented to the administrations of Mayor Beard in 1994 and Mayor Williams in 1995. The building is also included in the master plan drawing for Phase I of the Campus Plan in 1997, during the time that TNMP was working on the project. The City was aware of the plans for the building and the work being done by TNMP. The City opted to postpone the project due to funding issues. Paragraph 10.3.4 allows TNMP to recover compensation attributable to those portions of the project for which services were performed based on the preliminary estimate of the construction cost. Therefore, this claim for $69,492.50 was properly granted.

Basic Services Fee for the Court Plaza
The trial court granted TNMP's claim for $14,103.36 for architectural services related to design of the court plaza. The estimated construction cost of this project was $235,056. TNMP completed seventy-five percent of the work and claims seventy-five percent of the eight percent new construction fee ($235,056 × .08 = $18,804.48 and $18,804.48 × .75 = $14,103.36). TNMP's records include an invoice to the City for this amount on December 16, 1998.
The City contends that this project was not included within the scope of the Campus Plan. It argues that TMNP's records contain discrepancies about whether an invoice for this service was paid. TNMP's billing journal has both a debit entry and credit entry for the amount claimed, and its records also include a handwritten notation stating that the invoice was not paid. The City argues that TNMP offered no explanation for the contradiction or proved that the invoice was not paid.
When questioned about the discrepancy, Michael Newman testified that his bookkeeper said the invoice had not been paid. He explained that the billings journal showed what bills were sent out and that a cash receipts journal was used to show payments received. He further explained there was no cash receipts journal for projects for which no income was received, thus suggesting that no payment was made on this project by the City. We note that the City offered no proof of payment to rebut Newman's claim of nonpayment.
It was reasonable for the trial court to accept Newman's explanation and find that the City had not paid for the design services related to the court plaza. The trial court's finding that the court plaza project was included as part of the Campus Plan was also reasonable and supported by the record. The contract is broadly worded and does not specify projects. The initial advertisement requesting architectural *710 services included the "development of a landscape plan for the grounds" as part of the plan. Moreover, a plaza is included in the various master plans. We find no error in this award.

Additional Services Fee for Delays
The trial court awarded TNMP $39,373.60 as fees for additional services required by the contractor's failure to complete the work on the new court building by the contractual substantial completion date. Michael Newman testified that the services provided were contingent additional services. These are described in Paragraph 3.3.6 of the contract as "services made necessary by the default of the Contractor, by major defects or deficiencies in the Work of the Contractor, or by failure of performance of either the Owner or Contractor under the Contract for Construction." Paragraph 3.1 of the contract requires the architect to notify the owner prior to commencing contingent additional services when they are required by circumstances beyond the architect's control. The owner is then required to give the architect "prompt written notice" if such services are not deemed to be required. These services are billed according to an hourly rate schedule.
TNMP's records include a cost analysis of additional services allegedly provided from November 29, 1998, the date the contractor was supposed to have reached substantial completion, until April 12, 1999, the actual date of substantial completion. However, Newman admitted that he did not notify the City prior to commencing these services. Moreover, he did not bill the City for these services.
The record does not support the trial court's finding that the City had notice through its personnel. Neither the testimony nor the exhibits indicate that the city had notice that TNMP was performing these particular additional services. Russell DeLancy, the City's architect, testified that TNMP's failure to obtain prior authorization for work was a recurring problem. By letter of March 19, 1998, pertaining to invoicing policies, DeLancy reminded TNMP of the need to follow procedures by informing the City when work exceeds the original contract scope or when additional work is required.
TNMP correctly contends that written contracts are subject to modification, even when the contract states that it must be modified in writing. See Wisinger v. Casten, 550 So.2d 685 (La.App. 2d Cir.1989). However, this record does not establish modification of the contractual notice requirements applicable to contingent additional services. TNMP's claim that it did as it was told by the City does not establish modification, particularly in light of the letter of March 19, 1998.
Because TNMP did not give the City notification prior to commencing these services as required by Paragraph 3.1.1 of the contract, we find that the services were not performed in accordance with the contractual provisions. Parties to a contract are required to perform in good faith, and this entails performance in accordance with the contractual provisions which set forth the parties' mutual obligations. We observe TNMP's failure to both abide by the contractual notice provisions and bill for additional services rendered would reasonably suggest to the City that services provided were basic services for which no compensation aside from the percentage fee would be due. The contract required TNMP to notify the City prior to commencing these services so as to give the City the opportunity to decide whether to forgo the additional services. This did not happen. Accordingly, we reverse the trial court's award.

*711 Additional Services Fee for Punch List Items

The trial court awarded TNMP $39,009.32 for additional services provided more than sixty days after substantial completion of the new court building to address punch list items. Here, too, the City argues that the claim should be denied, because TNMP failed to provide prior notice as required by the contract and failed to invoice the City until December 8, 2004. The City also contends that these services should be considered as additional project management services rather than as additional services.
Contrary to the City's latter contention, Paragraph 3.4.18 of the contract clearly states that services provided more than sixty days after the date of substantial completion are optional additional services. An hourly rate applies to these services. The contract also provides in Paragraph 3.1.1 that optional additional services "shall only be provided if authorized or confirmed in writing by the Owner."
TNMP's records indicate that services were provided and that the City was not only aware of the services, but was also working with TNMP in getting the contractor to complete the punch list items. Russell DeLancy testified that he knew TNMP was providing services pertaining to the punch list items. These services were provided even after the City terminated its contract with TNMP. Moreover, the record includes correspondence between TNMP and the City pertaining to the work and informing the City of TNMP's intent to charge for the additional services. The City clearly had notice of the services and actively sought TNMP's assistance in completing the punch list items. We cannot say that the trial court's award for this item was manifestly erroneous.[3]
TNMP's Assignments of Error

Fee for Governmental Center Signage
TNMP seeks payment of $5,043 for work designing a signage concept for the court plaza. The trial court denied the claim upon concluding that TNMP had failed to bill for its services.
TNMP's records indicate this work was done in June and July of 1998. TNMP asserted this claim as one for a basic services fee but applied an hourly rate to determine the fee due. Michael Newman explained that TNMP had no construction cost estimate on which to base this claim, so he elected to apply an hourly rate. This explanation is somewhat disingenuous for two reasons.
First, as shown by the exhibits, the signage work is clearly part of or related to the court plaza design work. TNMP had an estimate for construction cost of the court plaza in November 1998, charged the City based on this estimate, and was awarded payment on its claim for services related to the court plaza.
Second, the contract does not provide for payment of basic services according to an hourly rate. Newman testified that the signage design could be considered an optional additional service. If so, the contract requires written authorization from the owner prior to providing the service. TNMP did not have written authorization. Although Newman testified that Mayor Williams told him to go ahead with the work, the record does not establish that the mayor authorized the work as an additional service or knew it would be charged separately from the basic services work on the court plaza project. Also, prior to this work being done, TNMP had received *712 the letter of March 19, 1998, regarding invoicing policies. TNMP was aware of the need to abide by the notice requirements in the contract before providing additional services and failed to do so. For these reasons, we find no error in the trial court's denial of this claim.

Additional Services Fee for Master Plan Cost Analysis
TNMP seeks payment of $39,745.66, the fee it claims is owed for a master plan cost comparison analysis. The trial court denied this claim, because TNMP never invoiced the City for the work done.
Michael Newman testified that the study was requested during a City Council meeting by then Councilman Hightower and that the mayor told him to go ahead with the project. However, TNMP provided no proof of written authorization from the City to provide this optional additional service as required by Paragraph 3.1.1 of the contract. Absent such written proof, the record does not establish that the City authorized TNMP to proceed with the cost comparison analysis as an additional service. We find no merit in TNMP's contention that the provisions requiring prior notice were orally modified by the parties. Newman's testimony that he did what he was instructed to do by the City does not establish oral modification of the contract. Here, too, the cost comparison analysis was provided after TNMP's receipt of the March 19, 1998 letter regarding invoicing policies. On this record, we find no oral modification.
Paragraph 10.4.1 requires payments for additional services to be made monthly upon presentation of the statement of services rendered. While there is no explicit correlative requirement that the architect bill monthly, the requirement for monthly payment implies timely billing upon rendition of additional services. Expert testimony indicated that it is highly unusual to wait for years before trying to collect for services rendered. TNMP's inexplicable failure to have billed for this additional service when rendered is astounding and calls into question whether TNMP considered the service an additional service when provided or considered it part of the basic services. While the failure to bill may not be sufficient to deny the claim, TNMP's failure to have obtained authorization as required by the contract supports the trial court's ruling.

Additional Services Fee for Campus Plan Energy Study
TNMP seeks a fee of $18,751.08 for a campus plan energy study done in 1997 to determine whether a central energy plant for the campus plan facilities would save money. TNMP contracted with John J. Guth Associates, Inc., for the study. TNMP did not bill the City.
Again, TNMP did not have prior written authorization for this optional additional service as required by the contract. Michael Newman testified that the City instructed him to do the work and used the results. However, this does not establish that the City authorized the work as an additional service, nor does it suggest that the City agreed to a modification of the notice requirements in the contract. Notice provisions are not mere window dressing; rather, they assist the parties in clearly understanding their obligations. The notice provisions allow the City to explicitly authorize only those additional services that meet budgetary requirements and serve the public interest. The notice provisions also protect TNMP by clarifying what additional services are approved by its client. For these reasons and others given in denying the prior claim, we find no error in the trial court's ruling.

*713 Basic Services Fee for New Police Building

The trial court denied TNMP's claim for the unpaid balance of fees owed for architectural services rendered for the new police building that was not built. TNMP seeks $134,103.74 for this claim. The trial court found that Newman's invoices were paid by the City. The trial court also found that Newman failed to bill in a timely manner for amounts it claims are still due.
Article 10.3.4 states that compensation for portions of the project that are deleted or not constructed is to be based on "(1) the lowest bona fide bid or negotiated proposal, or (2) if no such bid or proposal is received, the most recent preliminary estimate of Construction Cost or detailed estimate of Construction Cost for such portions of the Project." Here, the project was deleted after a construction contract had been confected by the City and Brice Building Co., Inc., for the amount of $5,089,600, on November 17, 1998.
TNMP contends that it designed three add alternates that were not accepted by the City.[4] The contractor's bid on the add alternates was $1,335,600. Even though it did not bill for these, TNMP asserts that the add alternates should be added to the contract amount to determine fees owed. The City disputes this and asserts that it paid all invoices submitted by TNMP for services it rendered.
Even though it designed add alternates and received bids for their construction, TNMP invoiced the City based on a construction budget of $5,400,000, slightly above the construction contract price of $5,089,600. We find no basis in the contract for TNMP to have recalculated fees due for trial purposes. In cases of doubt, a contract executed in a standard form provided by one of the parties must be interpreted in favor of the other party. La. C.C. art.2056. TNMP supplied the standard form contract language, so in cases of doubt, the provisions must be interpreted in the City's favor. Payment under Paragraph 10.3.4 is not based on construction cost as defined in Paragraph 5.1 of the contract. Rather, it is based on the lowest bona fide bid or negotiated proposal as stated in Paragraph 10.3.4. We find that under Paragraph 10.3.4, the construction contract price was the lowest bona fide bid or negotiated proposal. This interpretation is supported by TNMP's invoices, which were paid by the City, and TNMP's failure to seek further payment upon deletion of the contract if it believed such payment was due. For these reasons, we find no error in the trial court's denial of this claim.

Police Building Project Management Fee
Here, too, TNMP seeks additional fees in the amount of $105,474.40 for work on the police building project that the City canceled. TNMP seeks this amount as an additional project management fee. The trial court denied this claim upon noting that the project was not completed, that TNMP had billed the City for work done from the start of the project until it was stopped, and that the City had paid each invoice. For the reasons asserted in appealing the trial court's denial of the claim for basic services fees for work on the proposed new police building, TNMP appeals the denial of this claim.
According to Paragraph 11.3.1 of the contract, the project management fee is 2.8 percent of the construction cost, and it is compensation for project representation *714 beyond basic services. Because the City decided to discontinue construction of the new police building, the compensation owed to TNMP is governed by Paragraph 10.3.4 of the contract. As previously discussed, compensation under this section is different from that based on the total construction cost of the project. For the reasons given for affirming the trial court's denial of TNMP's claim for basic services fees on this same project, we also affirm the trial court's denial of this claim.
Award of Termination Expenses
Paragraph 8.6 of the contract states:
In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses as defined in Paragraph 8.7.
Paragraph 8.7 states, in pertinent part:
Termination Expenses are in addition to compensation for Basic and Additional Services, and include expenses which are directly attributable to termination. Termination Expenses shall be computed as a percentage of the total compensation for Basic Services and Additional Services earned to the time of termination. . . .
Paragraph 8.7 goes on to address the percentage of total compensation due as termination expenses at the various stages of the project. TNMP contends that it is due five percent of the total compensation for basic and additional services earned to the date of termination. The trial court agreed.
The City asserts that the termination provisions cannot be applied to the entirety of the contract. It points out that termination expenses are determined based on the phase of the project at the time of termination; thus, they are intended to apply to the individual projects rather than to the whole. TNMP contends the contract language is clear and unambiguous in providing for termination expenses based on services performed prior to termination.
The record shows that the City terminated its contract with TNMP by letter of July 17, 2000. We find no error in the trial court's finding that this unilateral termination by the City entitled TNMP to termination expenses of five percent of the total compensation for basic and additional services. This finding is supported by the contract language. The parties entered one contract for the entirety of the Campus Plan, thus termination expenses are to be calculated based on the total compensation earned. The trial court awarded termination expenses totaling $129,254.02; however, our amendment of the judgment requires a recalculation of the termination expenses due.
TNMP was paid $2,238,187.47 in fees prior to termination. Termination expenses on this amounts to $111,909.37 ($2,238,187.47 × .05). In this suit, TNMP was awarded the following:

 I. Basic Services
 A. Court Building/CEP Architectural Fee $ 8,225.22
 B. Court Building & CEP Project Mgmt. Fee $ 18,217.94
 C. Police Building Architectural Fee 0
 D. Police Building Project Mgmt. Fee 0
 E. Police Building Redesign Architectural Fee $ 55,720.44
 F. Electrical Feeder/Data Cable Routing $ 3,822.00
 G. Central Energy Plant Extension-Project Mgmt. Fee $ 5,152.00
 H. Engineering CSB Renovation Arch. Fee $ 69,492.50
*715
 I. Court Plaza Architectural Fee $ 14,103.36
 J. Governmental Center Signage Architectural Fee 0
 K. Court Building-Specialized Programming Fee $ 29,020.39
 L. Police Building-Specialized Programming Fee $ 20,106.10
 II. Additional Services
 A. Delays-Court Building & CEP 0
 B. Punch List Items-Court Building & CEP $ 39,009.32
 C. A/E Selection Services $ 25,000
 D. Masterplan Cost Comparison 0
 E. Campus Plan Energy Study 0
 TOTAL $287,896.27

Termination expenses on the amount awarded in this suit ($287,896.27 × .05) total $14,394.81. Therefore, the total termination expenses awarded are $126,304.18.
Court Costs
Lastly, TNMP asserts that the trial court erred in assessing one-fourth of the costs to it and seeks to have the City cast with all cost of the proceedings at trial and on appeal. As provided by La. C.C.P. art.1920, "[t]he court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." The trial court's allocation of costs between the parties will not be disturbed absent evidence that it constitutes an abuse of discretion. Shreveport Elec. Co., Inc. v. Oasis Pool Service, Inc., 38,776 (La.App.2d Cir.9/29/04), 889 So.2d 274, rehearing denied, writ denied, XXXX-XXXX (La.4/1/05), 897 So.2d 613; Ark-La-Miss Timber Co., Inc. v. Wilkins, 36,485 (La. App.2d Cir.12/11/02), 833 So.2d 1154.
While TNMP obtained some recovery, not all of its claims were granted. The City partly prevailed. There is no cut-and-dry rule for allocating cost between parties. Rather, the decision is within the court's discretion. We find no abuse of discretion in the allocation of costs by the trial court in this matter.
However, La. R.S. 13:5112 requires the assessment of costs against a political subdivision to be in a dollar amount. Rogers v. Town of Arcadia, 35,752 (La.App.2d Cir.4/3/02), 813 So.2d 1110. The trial court's judgment, which assessed costs by percentages, does not comply with La. R.S. 13:5112. Thus, we remand this matter to the trial court to assess any costs against the City in accordance with La. R.S. 13:5112.

CONCLUSION
For the reasons stated, we amend the trial court's judgment as provided in this opinion to award The Newman-Marchive Partnership a total of $414,200.45. Furthermore, we remand the matter for assessment of costs in accordance with La. R.S. 13:5112. Costs of appeal, which total $1,670.50, are assessed twenty-five percent ($417.62) to The Newman-Marchive Partnership and seventy-five percent ($1252.88) to the City.
AFFIRMED AS AMENDED.
REMANDED FOR ASSESSMENT OF TRIAL COSTS.

PER CURIAM ON REHEARING
*716 PER CURIAM.
The Newman Marchive Partnership, Inc., applied for rehearing of the judgment rendered November 1, 2006, which reduced the amount awarded by the trial court to $414,200.45. Though we deny the application for rehearing, we have considered the contention that the total award was improperly calculated. This consideration entailed review of the amounts awarded in the trial court and on appeal. As a result, error was found in the calculations of both courts.
On page 25 of its "Findings of Fact and Conclusions of Law," the trial court set forth the amounts awarded for each claim of basic and additional services.

 Municipal Court Building & Central
 Energy
 Plant Arch. Fee $ 8,225.22
 Municipal Court Building & Central
 Energy
 Plant Project Mgmt. $18,217.94
 Police Building Arch. Fee $ 0
 Police Building Project Mgmt. Fee $ 0
 Police Building Redesign Arch. Fee $74,920.44
 Electrical Feeder & Data Cable Routing
 Project Mgmt. Fee $ 3,822.00
 Central Energy Plant Service Extension
 Project Mgmt. Fee $ 5,152.00
 Engineering/CSB Renovation Arch. Fee $69,492.50
 Court Plaza Arch. Fee $14,103.36
 Governmental Center Signage Arch. Fee $ 0
 Municipal Court Building Specialized
 Programming & Planning $29,020.39
 Police Building Specialized
 Programming & Planning $20,106.10
 Delays-Court Building & Central Energy
 Plant $39,373.60
 Punch List Items Delay-Court Building
 & Central Energy Plant $39,009.32
 A/E Selection Services $ 25,000
 Masterplan Cost Comparison $ 0
 Campus Plan Energy Study $ 0

The awards total $346,442.87, and five percent of this amount should have been awarded as part of the termination expenses. However, on page 24, the trial court used the amount of $346,892.87 in calculating the termination expenses due on the claims awarded at trial. The trial court should have calculated termination expenses on the claims awarded as $346,442.87 × .05 = $17,322.14. Termination expenses due on the amount paid by the City was calculated as $2,238,187.47 × .05 = $111,909.38. Therefore, total termination expenses under the trial court's judgment should have been $111,909.38 + $17,322.14 = $129,231.52, instead of the $129,254 02 awarded by the trial court. The principal amount awarded in the trial court's judgment should have been $346,442.87 + $129,231.52 = $475,674.39.
The judgment on appeal amended the trial court's judgment by deducting $19,200 from the award for the Police Building Redesign Architectural Fee and vacating the award of $39,373.60 for the Delays  Court Building & Central Energy Plant. These amounts deducted from the corrected trial court award of $346,442.87 leaves the amount of $287,869.27. Termination expenses on this amount is $287,869.27 × .05 = $14,393.46. Total termination expenses are $111,909.38 + $14,393.46 = $126,302.84. Therefore, the corrected total judgment on appeal is $287,869.27 + $126,302.84 = $414,172.11.
Accordingly, we amend our judgment to reflect a total award of $414,172.11.
JUDGMENT AMENDED.
NOTES
[1] The Newman Partnership, Inc., began transacting business as The Newman Marchive Partnership, Inc., in 2000. See The Newman Marchive Partnership, Inc. v. City of Shreveport, 40,512 (La.App.2d Cir.2/24/06), 923 So.2d 852, footnote 2, writ denied, XXXX-XXXX (La.6/23/06), 930 So.2d 983.
[2] TNMP's Second Amended and Supplemental Petition was not included in the record lodged in this court. However, pursuant to an order granted in response to a motion by the City, the omitted petition has been added as a supplement to the record.
[3] The issue of termination expenses asserted by the City will be addressed after consideration of TNMP's assignments regarding the denial of various claims.
[4] As suggested by the record, add alternates are optional features that may be added to the project.