652 So.2d 637 (1995)
PENNINGTON CONSTRUCTION, INC.
v.
R A EAGLE CORPORATION.
No. 94 CA 0575.
Court of Appeal of Louisiana, First Circuit.
March 3, 1995.
*638 Craig L. Kaster, Baton Rouge, for plaintiff-appellee Pennington Const., Inc.
Sam J. D'Amico, Baton Rouge, for defendant-appellant R A Eagle Corp.
Before WATKINS and FOGG, JJ., and TANNER,[1] J. Pro Tem.
WATKINS, Judge.
At issue in this appeal is the existence vel non of two building contracts. Because the trial court apparently did not consider the proper burden of proof, we reverse the part of the judgment in plaintiff's favor. We affirm the judgment denying defendant relief on its reconventional demand.

BACKGROUND
Plaintiff Pennington Construction, Inc. (Pennington) filed suit against defendant R A Eagle Corporation (Eagle) claiming defendant breached a contract (hereinafter "plaintiff's contract") in which defendant accepted a proposal for plaintiff to build a warehouse for $1,710,000. Defendant reconvened, claiming plaintiff refused to perform a contract (hereinafter "defendant's contract") whereby plaintiff would build the warehouse for $15,000 more than the lowest bid received by defendant on the project from another bidder.
It is undisputed that Eagle undertook to have constructed a 300,000 square foot warehouse on its property at a Dow Chemical satellite development. Eagle planned to build in two stages, first, 126,000 square feet and then, 174,000 square feet. It also is undisputed that Eagle, through its president Rene Ortlieb, awarded the building contract for the first phase to Salco Construction, Inc. (Salco). The alleged contracts in the appeal before us involve the second phase of the building project, although Salco ultimately built both phases.
Plaintiff's officers, Cecil J. Pennington and Ronald Pennington, claim that defendant agreed to award plaintiff the second phase of the building project pursuant to plaintiff's contract. Plaintiff claims the original price of $1,760,000 was amended to a price of $1,710,000 to reflect an exclusion of a particular type of sprinkler system, and that defendant agreed to the reduced price. In an effort to prove its case, plaintiff introduced into evidence plaintiff's contract containing the reduced price, which contract was in the form of a proposal from Pennington to Eagle, dated February 28, 1990, and signed by Cecil J. Pennington on behalf of Ronald Pennington, then president of the plaintiff corporation. Mr. Cecil Pennington testified that the contract was presented to him by Mr. Ortlieb, along with a document entitled "Agreement." It is undisputed that plaintiff's contract was not signed by Mr. Ortlieb and that the "Agreement" was not signed by either of the Penningtons. Plaintiff's position is that the presentation of the proposal by Eagle (albeit in the form of a proposal by Pennington) was the offer, and Pennington's signature on the proposal was the acceptance.
Although defendant admits the dollar amount of plaintiff's contract was reduced to reflect the change of a sprinkler system, defendant denies ever accepting plaintiff's contract, and defendant relies on the undisputed fact that the document was not signed on behalf of Eagle. Instead, defendant claims the "Agreement" was the contract between the two corporations, providing that plaintiff would build the warehouse for $15,000 more than the lowest bid received by defendant from another contractor. Defendant entered into evidence an undated document, which was entitled "Agreement" and was signed by Mr. Ortlieb as president of Eagle. The document was from Eagle to Pennington and provided, in pertinent part:
It is the purpose of this document to create a binding legal document whereby R A Eagle Corporation grants Pennington Construction, Inc. the right to match any bid on the second stage of construction (i.e., 174,000 square feet) plus $15,000.00.... This right of matching plus $15,000.00 must be exercised by Pennington *639 Construction, Inc. within 30 days after presentation.
Attached hereto is a letter proposal from Pennington Construction. If R A Eagle chooses not to make any changes from this document at the time of construction, then this contact [sic] shall govern the relationship between the parties. If R A Eagle decides to make changes in the document, then this document shall act as a framework to finalize a document to govern the relationship between the parties.
In written reasons for judgment the trial court observed that there was contradictory testimony over the timing of the various documents. Therefore, the trial court turned to the credibility of the witnesses and concluded that the Penningtons' testimony was "far more credible" that Mr. Ortlieb's. The trial judge concluded:
It is far more believable that Mr. Ortlieb prepared the proposal based upon his knowledge of the job and Pennington's bid and presented it to Pennington for acceptance. This presentation constituted a valid offer and Pennington's signature on the offer constituted a valid acceptance at which point the requirements of La.Civil Code article 1927 were satisfied and the contract was perfected.
The trial judge's error lies in the fact that he failed to characterize either of the two contracts as written or verbal, and thus, he overlooked the requisite burden of proof.

BURDEN OF PROOF
A party claiming the existence of a contract has the burden of proving that the contract was perfected between himself and his opponent. LSA-C.C. art. 1831. Unless required by law, the contract need not be in writing. However, it is elementary that to be bound by a written instrument, the party must be a signatory to the instrument. LSA-C.C. art. 1837.[2] The only written evidence pertaining to plaintiff's contract was not signed by defendant, and vice versa. Because neither document was signed by both of the parties, neither constitutes an authentic act nor an act under private signature. See LSA-C.C. arts. 1833 and 1837. Although the trial court did not address the issue, it is obvious that neither of the two contracts claimed by the parties in the instant case can qualify as a written contract. Therefore, we are not concerned with proof of a written contract.
The applicable statutory provision for the burden of proof in the instant case is LSA-C.C. art. 1846:
When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.
If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.
To meet the burden of proof of an oral contract by a witness and other corroborating circumstances, a party may serve as his own witness and the "other corroborating circumstances" may be general and need not prove every detail of the plaintiff's case. Bossier Marble, Inc. v. Kelly's Truck Terminal, Inc., 530 So.2d 1198 (La.App.2d Cir.), writ denied, 532 So.2d 133 (La.1988). However, the corroborating circumstances that are required must come from a source other than the plaintiff. Hilliard v. Yarbrough, 488 So.2d 1038 (La.App.2d Cir.1986). Whether there were corroborating circumstances sufficient to establish an oral contract is a question of fact. Pelican Electrical Contractors v. Neumeyer, 419 So.2d 1 (La. App. 4th Cir.), writ denied, 423 So.2d 1150 (La.1982). Our review of factual conclusions is limited to a review of the entire record to determine if those conclusions are clearly wrong. Arceneaux v. Dominque, 365 So.2d 1330 (La.1978).
In the instant case, it appears the trial court did not consider the existence vel non of corroborating circumstances. We accept the trial court's evaluation of the witnesses, that is, that the plaintiff's witnesses *640 were more credible. However, we find the record devoid of any evidence that corroborates the testimony of the two Penningtons. Indeed, other evidence refutes the testimony. The unrefuted testimony of Anthony G. Salvaggio of Salco Construction, Inc. was that it was the industry practice to have building contracts of the magnitude required for phase two to be in writing and signed by both parties. Therefore, the testimony by the Penningtons that Mr. Ortlieb orally accepted plaintiff's contract is uncorroborated, and it was refuted by the testimony of Mr. Ortlieb who denied such acceptance. We note, parenthetically, that Mr. Ortlieb's signature on the "Agreement" could not serve as an acceptance to the plaintiff's contract because the terms of the "Agreement," specifically the terms of the price, were different from the terms of plaintiff's contract.
Nor does the fact that Eagle's computer was used to run off the copy of plaintiff's contract suffice as corroborating evidence of an obligation on Eagle's part. Any inference of Eagle's intent to be bound by the terms of the printout is contradicted by the testimony of record that the specifications for phase two were computerized and bids by various contractors were "plugged in" to maintain a consistency in the bids. Mr. Ortlieb expressed the reason for using the computer printout as being able to weigh "apples and apples." If one were to infer that Eagle was bound because of the printout of Pennington's bid, then Eagle would be bound to all of the companies that submitted bids and whose bids likewise were "plugged in."
Suffice it to say that the trial court erred in failing to consider whether plaintiff carried its burden of proving an obligation on Eagle's part because of the existence of an oral contract. The record does not contain the requisite corroborating circumstances. Accordingly, we must reverse the trial court judgment in plaintiff's favor.
There exists the same lack of corroborating circumstances to substantiate an obligation on plaintiff's part to abide by the "Agreement" to build for the low bid plus $15,000. Thus, we affirm the trial court judgment denying defendant's reconventional demand.
Both parties are cast with half of the costs of appeal.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The jurisprudential exception to LSA-C.C. art. 1837, that an act under private signature is valid even though signed by one party alone, is not triggered by the facts in the instant case because neither party availed itself of the other party's contract. See LSA-C.C. art. 1837, Comment (b).