STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

NO. 07-1380


PRIME INCOME ASSET MANAGEMENT, INC.

VERSUS

LOUIS TAUZIN, ET UX.


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. 2006-6261
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, Elizabeth A. Pickett and Billy H. Ezell, Judges.


**AFFIRMED.**

**Robert A. Kutcher**
**Nicole Sophia Tygier**
**Michael L. Cohen**
**Chopin, Wagar, Richard & Kutcher, LLP**
**Two Lakeway Center, Suite 900**
**3850 North Causeway Boulevard**
**Metarie, LA 70002**
**(504) 830-3838**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
       **Prime Income Asset Management, Inc.**

**Theodore G. Edwards**
**Christopher S. Afeman**
**Davidson, Meaux, Sonnier & McElligott**
**Post Office Box 2908**
**Lafayette, LA 70502**
**(337) 237-1660**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Louis Tauzin**
    **Claire Monet Tauzin**

PETERS, J.

The plaintiff in this litigation, Prime Income Asset Management, Inc. (Prime Income), appeals the trial court's grant of a summary judgment dismissing its suit against the defendants, Louis Tauzin and Claire Montet Tauzin (the Tauzins). At issue is whether an expired written contract to buy and sell real property was orally amended to reinstate and amend the contract and establish a new closing date for the contemplated sale. For the following reasons, we affirm the trial court's grant of the summary judgment.

## DISCUSSION OF THE RECORD

This litigation arises from an attempt by Prime Income to purchase 21.5 acres of Lafayette Parish immovable property from the Tauzins. The parties had entered into a written purchase agreement dated May 19, 2006, wherein Prime Income agreed to purchase the 21.5 acres from the Tauzins on a per square foot basis. The purchase price was to be calculated at $2.12 per square foot, and the purchase agreement estimated the total price to be $1,985,464.80 based on the preliminary square foot calculation. The purchase agreement also set the initial closing date for the transfer of title as August 15, 2006.[1]

When the transfer of title did not take place on August 15, 2006, Prime Income sought and obtained extension of that deadline from the Tauzins. In fact, the closing date was extended twice pursuant to the requirements of Article XIII, Section 13.6 of the Purchase agreement.[2]

---

[1] The purchase agreement set the closing date at forty-five days after the expiration of the inspection period. The inspection period expired on July 1, 2006.

[2] Article XIII, Section 13.6 of the purchase agreement reads as follows:

**Entire Agreement**. This Contract contains the entire agreement of the parties with respect to the subject matter hereof, and shall not be varied, amended, or superseded except by written agreement between the parties hereto.

The first written amendment extended the closing date to September 15, 2006. This extension was needed because a zoning and platting contingency for a dedicated street required by the Lafayette Parish Planning Commission resulted in a reduction of the square footage contemplated by the sale.[3] In the written extension agreement, the Tauzins also recognized Prime Income's right to a $62,100.00 credit against the preliminary sale price because of the reduction of total square footage resulting from the public street contingency.

The September 15 deadline passed without the parties transferring title to the immovable property. The inability to complete the transfer before the deadline resulted in Prime Income's second written amendment extending the closing date. The request for an extension came in the form of an e-mail transmitted at 10:17 a.m. on October 30, 2006, from Mark Nardizzi, a realtor representing Prime Income, to the Tauzins' attorney. In the e-mail, Mr. Nardizzi stated that Prime Income was trying to "finish this up" and further stated that, "I assume the seller will allow this to close. Please advise." At 1:07 p.m. that same day, the Tauzins' attorney responded by an e-mail in which he agreed on behalf of his clients to a one-day extension. However, in granting the extension until October 31, the attorney further stated in that e-mail that "Seller will not allow a credit after Oct 31th [*sic*]. Contract is cancelled Nov 1st and must be renegotated [sic]. Clients may renegotiate. I suggest you call."

The transfer of title did not occur on October 31, 2006, either. Instead, Prime Income released the earnest money deposit of $50,000.00 to the Tauzins as liquidated damages.

---

[3]The applicability of this zoning and platting contingency had been provided for in the original purchase agreement.

2

Despite being fully aware that the Tauzins considered the purchase agreement to no longer be of any effect, Prime Income continued to negotiate a purchase of the immovable property. In a faxed communication dated November 1, 2006, Mr. Nardizzi informed the Tauzins' attorney that if the Tauzins would agree to a new closing date of December 5, 2006, Prime Income would deposit an additional $50,000.00 in earnest money and would pay $250.00 per day as penalties from November 1, 2006, until closing. The Tauzins' attorney responded to Mr. Nardizzi's offer on the same day through a faxed letter, wherein he stated:

> We are unable to make a decision this week. I am in the hospital undergoing chemotherapy. The offer is not in accordance with our previous demand and it will require additional consultation with my client, and I cannot do this until next week. Be advised I will not recommend it.

Six days later Prime Income submitted a written amendment to the purchase agreement, the content of which mirrored the terms of Mr. Nardizzi's November 1, 2006 proposal. The record contains no evidence to suggest that the Tauzins' attorney ever responded to this submission.

During their attorney's chemotherapy treatment, the Tauzins were contacted directly by Hank Gaines, another realtor representing Prime Income. After he contacted the Tauzins, Mr. Gaines informed Mr. Nardizzi that the Tauzins were agreeable to an extension to December 5, 2006. When Prime Income later became aware that the Tauzins had no intention of closing the transaction on December 5, 2006, it filed the instant suit seeking declaratory relief, specific performance, and damages. In its suit, Prime Income asserted that the Tauzins orally agreed to extend the closing date to December 5, 2006, by virtue of their conversations with Mr. Gaines on November 2, 2006. Based on the theories of equitable and promissory

3

estoppel, Prime Income asserted that the Tauzins had waived their right to require a written extension as was required in the purchase agreement.

In their answer, the Tauzins denied that any extension, oral or otherwise, existed to extend the closing of the sale after the October 31, 2006 deadline. That defense comprises the basis for the Tauzins' motion for summary judgment. The Tauzins point out in their motion that the lack of a written agreement to extend the closing deadline beyond October 31, 2006, is not disputed. That being the case, they argue, they are entitled to a summary judgment as a matter of law.

The Tauzins supported their motion for summary judgment with their affidavits as well as the purchase agreement itself. In his affidavit, Mr. Tauzin acknowledged being contacted by Mr. Gaines on November 2, 2006, but denied making any "binding commitments for any extension." He further asserted that he specifically informed Mr. Gaines "that any requests for extension must be presented to" his attorney and that "[he] never agreed, verbally or otherwise, to extend the closing date for the sale contemplated by the purchase agreement beyond October 31, 2006." Mrs. Tauzin asserted in her affidavit that she never spoke to anyone representing Prime Income concerning an extension of the closing date, and that "[she] never agreed, verbally or otherwise, to extend the closing date for the sale contemplated by the purchase agreement beyond October 31, 2006."

In opposition to the motion for summary judgment, Prime Income submitted the affidavits of Mr. Gaines and Mr. Nardizzi. In his affidavit, Mr. Gaines asserted that he had separate telephone conversations with both Mr. and Mrs. Tauzin on November 2, 2006, and that both Mr. and Mrs. Tauzin agreed that the closing date had been extended to December 5, 2006. According to Mr. Gaines, he questioned

4

Mr. Tauzin as to whether "there were any documents that needed to be signed, and [Mr. Tauzin] informed [him] to wait until his attorney . . . was out of the hospital." He then telephoned Mr. Nardizzi "and advised him to send a draft form of an amendment memorializing this extension of the [Purchase] Agreement."[4]

Mr. Nardizzi asserted in his affidavit that after receiving the response from the Tauzins' attorney, he contacted Mr. Gaines and requested that Mr. Gaines call the Tauzins personally. Based only on what he was told by Mr. Gaines, Mr. Nardizzi "understood" that the Tauzins had agreed to extend the closing date to December 5, 2006, and that the execution of any documents needed to confirm this agreement would have to wait until the Tauzins' attorney was released from the hospital. In response to Mr. Gaines' suggestion, he forwarded the November 2, 2006 proposed written amendment extending the closing date.[5]

After a hearing, the trial court granted the motion for summary judgment and dismissed the demands of Prime Income. In doing so, the trial court recognized that the affidavits established the existence of a factual dispute concerning the telephone conversations between the Tauzins and Mr. Gaines, but concluded that these disputes were not material to the resolution of the issue before it. The trial court specifically concluded that, based on the showing made, Prime Income could not establish that the closing date for the purchase agreement had been extended to December 5, 2006. Prime Income appealed this judgment, asserting in its one assignment of error that the

---

[4]Contrary to Mr. Gaines' representation in this paragraph of his affidavit, the draft of the amendment, which is in the record, supposedly "memorializing this extension of the Agreement" made no mention that it was to memorialize a verbal agreement, nor did it mention any verbal agreement. It was not accepted and it was not signed by the Tauzins.

[5]Mr. Nardizzi's affidavit does not state whether he forwarded the proposed amendment to the Tauzins or to their attorney.

trial court erred in granting the motion for summary judgment. However, in asserting this one assignment of error, Prime Income raises three issues for us to consider:

1. Whether the district court erred in finding that the Tauzins' conduct did not, as a matter of law, rise to the level sufficient to constitute an oral modification to the Purchase Agreement.

2. Whether the district court erred in granting summary judgment prior to adequate discovery being conducted.

3. Whether there exist genuine issues of material fact precluding the grant of summary judgment.

For the reasons which follow , we conclude that the trial court did not err in granting the summary judgment.

## OPINION

Because the judgment on appeal is a summary judgment, our review is *de novo*, "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law." *Supreme Serv. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827, p.4 (La. 5/22/07), 958 So.2d 634, 638.

The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. *Sanders v. Ashland Oil, Inc.*, 96-1751 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, *writ denied*, 97-1911 (La. 10/31/97), 703 So.2d 29. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions. The procedure is favored and shall be construed to accomplish these ends. La.Code Civ.P. art. 966 (A)(2). The motion should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the

6

affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966 (B).

Although the burden of proof remains with the mover, if the mover will not bear the burden of proof at trial on the issue raised by the motion for summary judgment, then the mover may merely point out to the court the absence of factual support for one or more elements essential to the non-mover's claim. The burden then shifts to the non-mover to present evidence demonstrating that genuine issues of material fact remain. La.Code Civ.P. art. 966 (C)(2). If the plaintiff then fails to produce such evidence, summary judgment is proper. *Id.*

Facts are "material" for summary judgment purposes if they determine the outcome of the legal dispute. *Manor v. Abbeville Gen. Hosp.*, 06-500 (La.App. 3 Cir. 9/27/06), 940 So.2d 888. The determination of materiality of a particular fact must be made in light of the relevant substantive law. *Commercial Prop. Dev. Corp. v. State Teachers Ret. Sys.*, 00-392 (La.App. 1 Cir. 3/28/01), 808 So.2d 534.

The applicable substantive law in this case is the well-established statutory and jurisprudential rule that any contract concerning immovable property must be in writing and no modification of such a contract will be enforced unless it is also in writing. La.Civ.Code arts. 1839 and 2440; *Pittman v. Pomeroy*, 552 So.2d 983 (La.App. 2 Cir. 1989). Also substantively applicable is the requirement that contracts are the law between the parties and must be performed in good faith. La.Civ.Code art. 1983; *Newman Marchive P'ship, Inc. v. City of Shreveport*, 41,460 (La.App. 2 Cir. 11/1/06), 944 So.2d 703, *writs denied*, 07-60, 07-97 (La. 3/9/07), 949 So.2d 448, 452.

While Prime Income concedes that as a general principle that any request for a modification of the terms of the May 19, 2006 purchase agreement should have been in writing to be enforceable, it argues that such modifications can, nevertheless, be made orally when the actions of a party constitute a waiver sufficient to lull the opposing party into believing that a writing is not necessary. We acknowledge that there is jurisprudential support for this argument.

In *Rogers v. Horseshoe Entertainment*, 32,800, p. 7 (La.App. 2 Cir. 8/1/00), 766 So.2d 595, 601, *writ denied,* 00-2894, 00-2905 (La. 12/8/00), 776 So.2d 463, 464, the second circuit stated that "[w]aiver occurs when there is a knowledge of the existence of the right, coupled with either an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." Additionally, in *Briggs v. Siggio*, 285 So.2d 324 (La.App. 3 Cir. 1973), *writ denied*, 288 So.2d 641 (La.1974), this court found that where the defendants had previously accepted a verbal exercise of the first of three options, had repeatedly acknowledged notice of the verbal exercise of the third option, and had waived the requirement that it be in writing, the defendant could not successfully assert an exception of no cause of action to the plaintiff's suit for specific performance because evidence could be introduced to show that it was through their fault that the option was not exercised in writing.

The first and third issues raised by Prime Income's single assignment of error address the correctness of the summary judgment and will be considered together. Prime Income's complaint that the trial court erred in its grant of the summary judgment is a multi-faceted argument to the effect that the Tauzins' conduct, the equities in this case, and the doctrine of detrimental reliance require the finding that

an oral modification extending the closing date of the purchase agreement occurred. In considering this argument, we first note that Prime Income bore the burden of producing evidence sufficient to establish that it would be able to satisfy its evidentiary burden of proof at trial on the issue of whether the closing date had been orally extended, or at least to establish that there existed a genuine issue of material fact concerning whether it was orally extended.[6]

Prime Income's arguments that an oral modification exists are necessarily predicated upon the premise that the May 19, 2006 purchase agreement had somehow remained in effect despite the e-mail of October 30, 2006, which explicitly stated that it was cancelled as of November 1, 2006, and "must be renegotated [sic]." Therefore, Prime Income's burden included the obligation to produce evidence that the purchase agreement had been resurrected as well as the obligation to produce evidence that an oral extension of the resurrected agreement existed. To suggest any burden less than this dual burden would be to illogically conclude that there could be an amendment to a contract not in existence.

> A party who claims the existence of a contract between himself and his opponent has the burden of proving the existence of the obligation. La.Civ.Code art. 1831; *Pennington Const., Inc. v. R.A. Eagle Corp.*, 94-0575 (La.App. 1 Cir. 3/3/95); 652 So.2d 637. An oral contract over $500 must be proved by at least one credible witness and other corroborating circumstances. La.Civ.Code art. 1846. To meet the burden of proof of an oral contract the contract must be proved by a witness and other corroborating circumstances. *Id*. A party may serve as his own witness. *Pennington Construction*, 652 So.2d 637. The corroborating circumstances that are required must come from a source other than the plaintiff. *Id*.

*Lanier Implement Co., Inc. v. G & H Seed Inc.*, 99-1591, p. 10 (La.App. 3 Cir. 3/1/00), 756 So.2d 569, 574-75.

---

[6]The Tauzins satisfied their burden of proof by establishing that the May 19, 2006 purchase agreement had expired by its very terms.

We find no evidence to establish that Prime Income and the Tauzins resurrected the expired contract. When Mr. Nardizzi contacted Mr. Gaines and instructed him to telephone the Tauzins directly, he was in possession of the October 30, 2006 e-mail from the Tauzins' attorney cancelling the contract, had attempted to negotiate a new contract through his faxed communication of November 1, 2006, had been informed by fax that same day that no decision would be forthcoming on his offer until the attorney was discharged from the hospital, and had been informed by that same fax that the attorney would not recommend acceptance of the new agreement.

Instead of waiting until the attorney could consult with his clients, Mr. Nardizzi attempted to by-pass the attorney and negotiate directly with the Tauzins. However, nothing in the affidavits before the trial court related to resurrection of the prior purchase agreement, and nothing suggested that a new agreement was being negotiated as well. The only thing discussed was the establishment of December 5, 2006, as the closing date for a non-existent purchase agreement.

Even assuming the continued viability of the May 15, 2006 purchase agreement, the record contains no support for Prime Income's argument that it had been lulled into believing an oral extension of the closing date would suffice in violation of both the law of this state and the terms of the purchase agreement. Unlike the situation in *Briggs*, 285 So.2d 324, there exists no history of prior oral extensions that would cause Prime Income to feel secure in believing its understanding of the alleged oral agreement would suffice. Additionally, nothing in the affidavits suggests that an oral agreement had been struck and that a written

10

contract with a new closing date would later be signed as a mere formality for the purpose of "memorializing" the oral extension.[7]

We also find no merit in Prime Income's argument that it had been lulled into believing that the Tauzins themselves had requested an offer to extend the closing to December 5, 2006, through the November 1, 2006 correspondence. Prime Income attempts to create this impression by relying on its own typographical error in Mr. Nardizzi's e-mail of that date. Referring to that e-mail, Prime Income repeatedly asserted that "*Sellers* [the Tauzins] requested the offer be made to extend the closing date to December 5, 2006. [Emphasis supplied]."[8] That is not a correct statement. Mr. Nardizzi's e-mail actually stated that "The *seller* has requested that I make this offer to the *seller* to allow the closing to take place December 5, 2006. [emphasis supplied]." When Mr. Nardizzi wrote that sentence his first use of the word "seller" was an obvious reference to an offer being made by him on behalf of his own client, Prime Income, and not one solicited by the Tauzins. Mr. Nardizzi made the mistake of referring to his principal as the "seller" rather than as the "purchaser," and Prime Income has woven this mistaken identification into the ostensible facts of this case. This can only be regarded as a palpable effort to implant the notion that the Tauzins themselves indicated they wanted to extend the closing date beyond October 31, 2006.

Prime Income adds another ingredient to its argument that it was lulled into believing it had obtained an extension of the closing, by attempting to interpret the

---

[7]Both Mr. Narduzzi and Mr. Gaines attempted to characterize the telephone conversations in this manner.

[8]Prime Income made this identical assertion at least three times: first in its original petition, again in the affidavit of Mr. Nardizzi opposing the motion for summary judgment, and finally in its brief before us on this appeal.

11

Tauzins' attorney's hospital bed communication to Mr. Nardizzi on November 1, 2006. In his communication on that date to the Tauzins' attorney,[9] Mr. Nardizzi ended his communication with the comment that:

> This is the best I can do. As I had mentioned earlier, I am at the mercy of my lender and internal pressure that is out of my control. I look forward to a successful closing.
> Hope you feel better.

The attorney's faxed response clearly informed Mr. Nardizzi that Prime Income's offer was not in accordance with the Tauzins' earlier demands, that the attorney was in the hospital undergoing chemotherapy treatments and could not consult with his clients until the following week, and that when he did consult with his clients he would not recommend that they accept Prime Income's request to extend the closing date until December 5, 2006.

Finally, Prime Income asserts, by argument closely related to its lulling theory, the equitable remedy of detrimental reliance, which is a form of equitable estoppel. Louisiana Civil Code Article 1967 makes detrimental reliance a ground for enforcement of an obligation, in the following pertinent language:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.

In construing this language Louisiana jurisprudence has required that the party seeking to invoke the doctrine of equitable estoppel establish the following three requirements: (1) a representation by conduct or word, (2) justifiable reliance, and (3) a change in position to one's detriment because of the reliance. *Law v. City of Eunice*, 94-1312 (La.App. 3 Cir. 4/5/95), 653 So.2d 149.

---

[9]This was the same communication that improperly characterized the Prime Income as the "seller."

Prime Income argues that it justifiably relied on the Tauzins' oral representations in the November 2, 2006 telephone conversations to change its position to its determent. The problem with this argument is that Prime Income presents no evidence to establish how it changed its position to its detriment or how it could have reasonably relied on the conversations to believe that the Tauzins had made an enforceable promise. Its argument is merely that the reasonableness of its reliance presents a genuine issue of material fact which precludes summary judgment. That argument does not take into account the *detrimental* element of detrimental reliance. That the reliance on the promise operated to the pleader's detriment is one of the grounds for enforceability of the alleged promise, as pointed out in Revision Comment (a) to La.Civ.Code art. 1967.

We find no merit in Prime Income's assertions that the trial court erred in finding that the Tauzins' conduct constituted a valid and enforceable oral modification of the May 15, 2006 purchase agreement. Additionally, we find no merit in Prime Income's argument that there exists genuine issues of material fact pertaining to the transaction at issue.

The remaining issue raised by Prime Income argues that the trial court erred in granting summary judgment prior to completion of discovery. We find no merit in this issue as well. Louisiana Code of Civil Procedure article 966 C(1) provides that after *adequate* discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.

The provision for adequate discovery does not grant a party an absolute right to delay a decision on a motion for summary judgment until all discovery is complete.

13

*West v. Watson*, 35,278 (La.App. 2 Cir. 10/31/01), 799 So.2d 1189, *writ denied*, 01-3179 (La. 2/8/02), 809 So.2d 140. Unless the party opposing the motion for summary judgment shows a probable injustice, a suit should not be delayed pending discovery when it appears at an early stage that there are no genuine issues of fact. *Advance Products & Systems, Inc. v. Simon*, 06-609 (La.App. 3 Cir. 12/6/06), 944 So.2d 788, *writ denied*, 07-26 (La. 3/9/07), 949 So.2d 444. The abuse of discretion standard is used to determine if the trial court allowed adequate time for discovery. *Id.*

Prime Income filed its suit on December 4, 2006, and the Tauzins filed their motion for summary judgment on April 25, 2007. The trial court set a hearing on the motion on June 18, 2007. In its brief to the trial court opposing the motion for summary judgment, Prime Income made no argument that the hearing date deprived it of its right to discovery. Furthermore, Prime Income never asked for a postponement or continuance of the hearing to allow discovery. On June 8, 2006, or ten days prior to the hearing date, Prime Income propounded discovery which the Tauzins promptly answered on June 15, 2008.[10] Again, Prime Income did not object to the hearing date and made no request for time for further discovery. The discovery issue first arose during arguments at the hearing on the motion for summary judgment when counsel for Prime Income argued that the hearing was premature because of the insufficiency of discovery. In response, the trial court acknowledged Prime Income's entitlement to adequate discovery, but noted in effect that Prime Income had not pursued that discovery since the filing of suit. We agree that the fault for any discovery not completed before the hearing on the motion for summary judgment lies

---

[10]Neither the discovery propounded nor the responses are in the record.

with Prime Income.  Thus, it cannot be heard to complain at this point in the litigation.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment granting the motion for summary judgment filed by Louis Tauzin and Claire Montet Tauzin and dismissing the claims of Prime Income Asset Management, Inc.  We assess all costs of this litigation to Prime Income Asset Management, Inc.

**AFFIRMED.**