HIGGINBOTHAM, J.
LThis is an appeal of a trial court judgment granting the defendant’s motion for involuntary dismissal of plaintiffs petition for damages arising out of an alleged breach of contract.
BACKGROUND
The facts surrounding this litigation took place a little over twelve years ago, during May through August 2003, when the defendant, Zachary Community School Board (“the School Board”) was preparing to open an independent school system with a start date of July 1, 2003. The School Board issued a request for proposals (“RFP”) for all-inclusive digital copier services (equipment, service, and supplies) over a five-year term beginning July 1, 2003, and ending June 30, 2008. The RFP required new copier machines at each school location, as well as the School Board office, with billing to occur on a fixed-cost monthly basis, and copy overages to be billed semi-annually to the School Board. The RFP allowed proposals for three alternatives ranging from 36 to 60 months and 4,000,000 to 5,000,000 copies, but the RFP was silent as to the School Board’s requirements for leasing the equipment or financing the payments for the copier services. The RFP stated that the School Board would accept the best overall proposal.
*57 The plaintiff, Key Office Equipment, Inc. (“Key Office”), was one of four vendors to timely respond to the School Board’s RFP by June 6, 2003. Key Office’s proposal included new Konica copier equipment, to be serviced by Key Office, as well as supplies and copy costs over the five-year term. Key Office’s proposal outlined the costs per copy and the billing rates for overages, but it did not specifically state any fixed monthly billing amount or any leasing or financing details. At the School Board’s June 12, 2003 meeting, the School Board’s business manager, Gordon Robertson, informed the School Board that Key Office had the best proposal-for copier services to be provided at all -four schools and the School |aBoard’s main office, which amounted to $5,666.67 per month with a limit of 5,000,000 copies per year for 60 months. The School Board unanimously approved Key Office’s proposal, without any discussion regarding leasing the equipment or financing payment options.
Subsequent to the School Board’s acceptance of Key Office’s proposal, the President of Key Office, Kenneth Gregory, presented documents to the Superintendent of the School Board, Warren Drake, incorporating a lease/finanee option for the copier services, even though the RFP was not contingent upon the School Board obtaining leasing/financing. The paperwork presented by Key Office indicated that the School Board was the customer/lessee, Key Office was the vendor, and Wells Fargo Financial Leasing, Inc. (‘Wells Fargo”) was the lessor. No document was ever signed by all three — Key Office; the School Board,' and Wells Fargo (or any other financial leasing company); however, Gregory and Drake each signed a “Pool Plan Agreement” on June 25, 2003, that outlined the térms of the RFP, without any reference to financing arrangements. Nevertheless, a sales order form generated by Key Office a week prior to the Pool Plan Agreement, and .signed by Drake, indicated that the bill for the copier equipment should be sent to Wells Fargo, an entity that was never mentioned in the terms of the RFP. Additionally, an “Equipment-Lease Agreement” was signed by Drake on behalf of the School Board, but Wells Fargo never accepted the transaction terms, and the signature line remained blank on the agreement.
Despite the fact that the Wells Fargo financing fell through, Gregory persisted in his attempts to arrange leasing/financing for the copier equipment on behalf of the School Board, but to no avail. Gregory and the School Board continued to né-gotiate leasing/financing terms for the Ko-nica copier equipment well into August 2003, which was after the RFP’s proposed start date of July 1, 2003. In the meantime, the School Board was using loaner equipment that it had in place, some of which had Ubeen supplied by Key Office. On August 25, 2003, Gregory agreed to revise a document titled “Municipal Lease and Option Agreement,” as suggested by the School Board, but neither party signed a final version of that agreement. At the end of August 2003, the School Board notified Key Office that it had decided to obtain copier services from another vendor. Notwithstanding this notice and the lack of a signed agreement, Key Office proceeded to generate a new purchase order for the Konica copier equipment on September 16, 2003, since a hold had. been placed on the original purchase order dated June 27, 2003. However, none of the ordered equipment was ever paid for or delivered to Key Office or the School Board.
Almost two years later, on June 10, 2005⅛ Key Office filed suit against the School Board for damages' arising out of breach of contract, detrimental rebanee, and violation of public bid law. After sev *58 eral years of litigation resulting in the dismissal--of Key Office’s tort and public bid law claims, a bench trial was held on April 30, 2015, solely on the merits of the breach of contract claim. Only Gregory, on behalf of Key Office, and an attorney, Joseph P. Brantley, IV, who represented Key Office during some of the RFP negóte ation process, testified at trial. When Key Office rested its case, the School Board moved for an involuntary dismissal under La.Code Civ. P. art. 1672(B),.arguing that Key Office had failed to prove the existence of a contract. The trial, court found that after Key Office’s proposal, on the School Board’s RFP was accepted, both parties engaged in subsequent negotiations concerning financing that modified the original terms of the RFP. The trial court determined that there was no evidence of a written contract and there was insufficient evidence of corroborating circumstances to show a meeting of the minds for a valid oral contract. Thus, the trial court granted the School Board’s motion for involuntary dismissal. A judgment was signed accordingly on May 15, 2015, dismissing all of Key Office’s claims with prejudice. Key Office appeals.
J^DISCUSSION

Evidentiary Ruling

- Initially, Key Office asserts that the trial court committed error and abused its diséretion by refusing to admit into evidence a letter that'was sent by Key Office’s attorney to the School Board’s attorney at the end of September 2003,' If a trial court commits evidentiary error that interdicts its fact-finding' process, this court must conduct a de novo review. Thus, any alleged evidentiary .errors are generally addressed first on appeal, inasmuch as a finding of error'may affect the applicable standard of review. Wright v. Bennett, 2004-1944 (La.App. 1st Cir.9/28/05), 924 So.2d 178, 182. The trial court has broad discretion in its evidentia-ry rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. Id., 924 So.2d at 183. See also Wilson v. Transportation Consultants, Inc., 2004-0334 (La.App. 4th Cir.3/2/05), 899 So.2d 590, 600, writ denied; 2005-0827 (La.5/13/05), 902 So.2d 1025 (the trial court’s exclusion of correspondence is subject to an abuse of discretion standard of review).
At trial, Key Office offered the testimony of its attorney, Brantley, who represented Key Office during the RFP negotiation process. Brantley testified that after he and Key Office learned that the School Board planned to obtain copier services from another vendor, he drafted a letter directed to the School Board’s attorney in an effort to avoid litigation and resolve the parties’ differences by requesting that the RFP awarded to Key Office be honored. When Key Office offered the letter for • admission into evidence, the School Board objected, arguing that the letter was privileged correspondence. The trial court sustained the objection; however, Key Office was allowed to proffer the letter.
Our review of the proffered evidence reveals that the letter was clearly marked as “Privileged Correspondence,” and it outlined a chronology of the events as set forth from Key Office’s perspective. Additionally, the letter included a discussion Lof how the parties could amicably resolve the matter without further action by Key Office. The proffered letter unmistakably concerned proposed settlement negotiations between Key Office and the School Board, which are not admissible. See La. C.E. art. 408(A) (“Evidence of conduct or statements made in compromise negotiations is ... not admissible.”) *59 Hence, the correspondence' was properly-excluded, and we find no abuse of the trial courts discretion in excluding this evidence. Moreover, we note that proposed settlement negotiations and an outline of events from one party’s point of view are not actually relevant to the threshold issue in this case: whether-Key Office proved the existence of an enforceable contract. Thus, the purported error attributable to the trial court’s exclusion of the proffered letter is inconsequential.

Motion-far Involuntary Dismissal'

Key Office also asserts that because it clearly established the existence of a contract, the trial court erred in granting the School Board’s motion for involuntary dismissal. Louisiana Code of Civil Procedure article 1672(B) provides the basis for an involuntary dismissal at the close of a plaintiffs case in a bench trial, when a plaintiff has shown no right to relief upon the facts and law. In determining wheth-ér involuntary dismissal should be granted, the appropriate standard is whether the plaintiff has presented sufficient evidence in its case-in-chief to establish a claim by a preponderance of the. evidence, which means taking the evidence as a whole, the fact or cause sought to be proved is more probable than not. Jackson v. Capitol City Family Health Center, 2004-2671 (La.App. 1st Cir.12/22/05), 928 So.2d 129, 131. When considering a motion for involuntary dismissal, a plaintiff is entitled to no special inferences in its favor. . However, absent circumstances in the record casting suspicion oh the reliability of .the testimony and sound reasons for its rejection, uncontroverted evidence should - be taken as true to establish a fact for which it is offered. Id.
|7The trial court’s grant of an involuntary dismissal is subject to the manifest error standard of review. Broussard v. Voorhies, 2006-2306 (La.App. 1st Cir.9/19/07), 970 So.2d 1038, 1041-42, writ denied, 2007-2052 (La.12/14/07), 970 So.2d 535. Accordingly, in order to reverse the trial court’s grant of involuntary dismissal, we must-find that there is no factual basis for the trial 'court’s finding or that the finding is clearly wrong. Id., 970 So.2d at 1042. See also Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). The issue is not whether the trial court was right or wrong, but whether its conclusion was reasonable. Id., 617 So.2d at 882. An appellate court must always keep in mind that if the trial court’s findings are reasonable, it may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id., 617 So.2d at 882-83. Further, an appellate court must do more than just simply review the record for some evidence that supports or controverts the trial court’s findings; it must review the entire record to determine whether the trial court’s finding was manifestly erroneous. Id., 617 So.2d at 882.
Because an involuntary dismissal of an action pursuant to Article 1672(B) is based on the “facts and law,” a review of the substantive law applicable to the plaintiffs case is necessary. .The primary issue to be decided in this case is whether there was a contract between Key Office and the School Board for copier services. A contract • is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. Civ.Code art. 1906. A party claiming the existence of a contract has the burden of proving that the contract was perfected between himself and his opponent. La. Civ.Code art. 1831; Pennington Const., Inc. v. R A Eagle Corp., 94-0575 (La.App. 1st Cir.3/3/95), 652 So.2d 637, 639. Unless required by law, the contract need not be *60 in writing; however, to be bound by a written document, the party must be a signatory to the document. Id., 652 So.2d at 639. Further, a contract is formed by consent of the parties established through offer |sand acceptance that may be made orally,.in writing, or by action or inaction that is clearly indicative of consent. La. Civ.Code art. 1927. However, where there is no “meeting of the minds” between the parties, there is no consent, and thus, no enforceable contract. Ricky’s Diesel Service, Inc. v. Pinell, 2004-0202 (La.App. 1st Cir.2/11/05), 906 So.2d 536, 538.
In this case, there is no evidence of a written document signed by both Key Office and the School Board that contains all of the terms pertaining to an agreement for copier services, including leasing and/or financing terms. The evidence shows that initially there was an offer and acceptance concerning the request for copier services as outlined in the RFP, and those terms were reflected in the written Pool Plan Agreement that was signed by Key Office and the School Board on June 25, 2003. However, one week earlier, the parties signed a sales order form indicating that financing by Wells Fargo was contemplated by both Key Office and the School Board. Thus, it is apparent that the parties modified the terms of the RFP to include leasing and financing options for the School Board. Evidence of this modification is found in certification documents, correspondence between Key Office and the School Board, an Equipment Lease Agreement, and a Municipal Lease and Option Agreement that were only signed by one of the parties or were not signed by either party. Additionally, the testimony of Gregory and Brantley confirm that the RFP terms were modified to include leasing and financing terms as subsequently requested by the School Board. But Gregory conceded that there were no signatures on the written document that included all of the modifications that were allegedly negotiated. Since there is no evidence of a written contract covering all of the negotiated terms and signed by both Key Office and the School Board, the issue to be resolved is whether there is sufficient proof of an oral contract that encompasses all of the terms as modified.
19Wlien a writing is not required by law, a contract not reduced to writing, for a price or value above $500.00 (which is undisputed in this case), must be proved by at least one witness and other corroborating circumstances. La. Civ.Code art. 1846; Suire v. Lafayette City-Parish Consol. Government, 2004-1459 (La.4/12/05), 907 So.2d 37, 58. To meet the burden of proving an oral contract, a party may serve as its own witness and the “other corroborating circumstances” may be general and need not prove every detail of the plaintiffs case. Pennington Const., 652 So.2d at 639. However, the corroborating circumstances that are required must come from a source other than the plaintiff. Id.
The existence or non-existence of a contract is a question of fact; and similarly, the issue of whether there were corroborating circumstances sufficient to establish an oral contract is a question of fact. Townsend v. Urie, 2000-0730 (La.App. 1st Cir.5/11/01), 800 So.2d 11, 15, writ denied, 2001-1678 (La.9/21/01), 797 So.2d 674; Pennington Const., 652 So.2d at 639. Our review of factual conclusions is limited to a review of the entire record to determine if those conclusions are clearly wrong. Id. We also note that when evaluating the evidence needed to establish the existence or non-existence of a contract, the trial court is allowed to make credibility determinations. Imperial Chemicals Ltd. v. PKB Scania (USA), Inc., 2004-2742 (La.App. 1st Cir.2/22/06), 929 So.2d *61 84, 93, writ denied, 2006-0665 (La.5/26/06), 930 So.2d 31. Reasonable evaluations of credibility -will not be disturbed upon review unless documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the determination. Stobart, 617 So.2d at 882.
Our review of the record supports the trial court’s finding that Key Office failed to prove the existence of an oral contract by a preponderance of the evidence. According to Gregory’s testimony, Key Office and the School Board were still attempting to negotiate toward an agreement well into August 2003, when Gregory |inagreed to accommodate the School Board’s proposed revisions to the Municipal Lease and Option Agreement. Gregory testified that he initialed the School Board’s requested changes/deletions on the municipal lease document, but he did not actually sign the document on behalf of Key Office. Instead, he delivered the revised document, requested that the School Board execute the document if in agreement, and send it back to him. Shortly thereafter the School Board informed Gregory that the deal was off. While Gregory indicated that he continued to negotiate and communicate with the School Board until September 10,2003, the School Board made it clear that it was obtaining copier services from another vendor in late August 2003. Also, it is significant that the copier equipment at issue was never paid for or delivered anywhere, even though Key Office ostensibly ordered the equipment. There simply is no corroborating evidence in the record that the parties ever had a “meeting of the minds” as to an oral contractual agreement regarding all of the RFP’s modified terms. Consequently, the trial court’s involuntary dismissal of Key Office’s lawsuit was not manifestly erroneous.
CONCLUSION
For the assigned reasons, we affirm the trial court’s judgment dismissing Key Office Equipment, Inc.’s lawsuit against the Zachary Community School Board with prejudice. All costs of this appeal are assessed to Key Office Equipment, Inc.
AFFIRMED.