On November 26, 1941, an authentic act of sale of a certain tract of land in the Parish of Terrebonne was executed, in which act of sale Sidney J. Dupre is the vendor and Mrs. Hazel Authement Naquin, wife of Lovelace Naquin, is the purchaser. The consideration of the sale is stated to be the sum of $1,600, of which $610 was paid in cash, and for the balance of $990 a note was executed by Mrs. Naquin, payable to her own order and by her endorsed in blank, made due and payable one month after date at the Citizens Bank Trust Company, Houma, Louisiana, and conditioned to bear interest at the rate of 8% per annum from date, secured by vendor's lien and privilege and special mortgage on the property sold. In the act of sale, there is a stipulation that the maturity date of the note could be extended from month to month by the maker by making monthly payment of the sum of $20 to be applied first to the payment of accrued interest and the balance to be applied towards payment of the principal. Plaintiff, who is a brother of Mrs. Naquin, alleges that, at the execution of the sale, he loaned to Mrs. Naquin the sum of $610 which is the cash consideration recited in the said act; that the note above described was discounted by Mrs. Naquin to the Citizens Bank Trust Co., Houma, Louisiana; that he made, on behalf of defendant and at her instance and request, various and sundry payments on said note, and finally, on or about May 31, 1943, paid to the said bank the sum of $383.93, being the balance due on the said note as of that date. He further alleges that the payment of the cash consideration and the payments made on the note were all made at the instance and request of defendant with the distinct understanding that said money so advanced and paid would be reimbursed to him subsequently, either by the payment of money or by the transfer to him of the real property belonging to defendant. He further alleges that he paid the taxes due on the property for the years 1942 and 1943, amounting to the total sum of $6.43, and that he paid the further sum of $48.60 as insurance premium covering the residence; that the actual amount applied by Mrs. Naquin to the indebtedness was the sum of $136, representing rental of the property for 17 months at $6 per month. Plaintiff claims that these payments made by him were a loan to his sister, and that he is entitled to recover $1,519.03, representing the total payments made by him, being the purchase price, taxes and insurance, less the $136 of rent applied to the debt. He asks also for legal interest on the $610 payment from the date it was made, and he asks for 8% interest and 10% attorney's fees on the $990 note, together with recognition of the vendor's lien and privilege.
In his suit, he joins his sister's husband, Lovelace Naquin, as master of the community, as defendant.
The defendants filed separate answers, but the answers may be considered as one. After admitting the execution of the act of sale and its contents, the defendants *Page 226 
deny the essential allegations of plaintiffs' petition, categorically denying that the alleged payments were loans to Mrs. Naquin. They aver that the payments were made by the plaintiff in the nature of a compensatory donation to his sister for services rendered by her to him in the past and for services to be rendered in the future. They aver that these services consisted of keeping house for the plaintiff, cooking for him, doing his wash, and assisting him in his store, for a period of nine years or more. In the alternative, defendant Lovelace Naquin, as head and master of the community, avers that if it be found that plaintiff is entitled to recover in any amount, then he makes a reconventional demand on plaintiff for the services rendered by Mrs. Naquin at the rate of $30 per month for a period of 108 months, or the total sum of $3,240.
After the trial of the case, the District Judge rendered a judgment in favor of the plaintiff and against the defendants, Mrs. Hazel Authement, wife of Lovelace Naquin, and Lovelace Naquin in the amount sued for, to-wit: $1,519.03, with 5% interest on $529.03, from November 26, 1941, and with 8% interest on $900 from November 26, 1941, plus an additional 10% on the latter amount as attorney's fees, and recognizing the vendor's lien and privilege and making it executory on the property described in the act of sale. Defendants have appealed.
The real question at issue in the case is whether or not the payments made by plaintiff constitute a loan to his sister, as alleged by him, or a gift or donation for past services rendered and services to be rendered.
[1, 2] In determining that question, we first must determine upon whom does the burden of proof rest under the pleadings. The same question was presented to the Supreme Court in the case of Rohrbacker v. Schilling, 12 La. Ann. 17. In that case the plaintiff, the administrator of Charles Wunsch, had alleged that the decedent had loaned to the defendant the sum of $1,000 "for the purpose of assisting him in his business." The defendant answered that the deceased did not loan, but gave the sum in question to him, partly in payment of an antecedent indebtedness and partly as a remunerative donation for services rendered. Says the Supreme Court: "The first question is, upon whom does the burden of proof rest under this state of the pleadings? Clearly upon the plaintiff, for there is no admission in the answer that the defendant ever owed the plaintiff anything. If the cause had been submitted upon the pleadings alone, the plaintiff must inevitably have become non-suited. In Barry v. Kimball, 10 La. Ann. 787, we declared the rule to be, both upon principle and authority, that a consistent answer, which does not admit that the defendant ever incurred a legal liability to the plaintiff, could not relieve the latter from the necessity of proving his demand." Following that decision, we hold that the answer in the case at bar is consistent, and in that answer defendants do not admit any indebtedness incurred by them to plaintiff; therefore the burden of proof rests with plaintiff throughout to establish that the transaction was a loan.
The evidence clearly shows that the sale was executed on November 26, 1941, and that the sale was made from Sidney Dupre in favor of Mrs. Hazel Authement Naquin, wife of Lovelace Naquin. The sale set forth that she is living and residing with her husband, but further states that she is purchasing with her own separate and paraphernal funds, under her own administration and control. The evidence further shows that the sale was confected without the presence and knowledge of the defendant Lovelace Naquin; that defendant had no independent income; that the arrangement for the discharge of the note was made by the plaintiff with the Citizens' Bank Trust Company; that plaintiff paid the cash consideration recited in the deed, paid out the note in full by various and sundry payments, the last of which was on May 31, 1943; paid the taxes for the years 1942 and 1943, and paid the insurance premium on the property; that the property was rented at the rate of $8 per month for a period of 17 months, which rentals were received by Mrs. Naquin, and she turned them over to the plaintiff. On all other phases of the case, the testimony is highly contradictory. *Page 227 
Plaintiff testified in effect that his sister came to live with him in November, 1933, and continued to live with him until April, 1943, during which time she helped him to some extent in the home and in the store, and he implies that these services were amply compensated by the fact that he furnished a place for her to live and also for her husband, whom she married in 1934, and furnished most of the groceries out of his store, which was under the same roof as the residence. He did admit, under cross-examination, that he went to get his sister to work for him in the latter part of 1933, at which time he recalls that he might have offered her $40 for three months' work, and on being pressed further on cross-examination, as to the value of her services, he stated that possibly such services were worth a dollar per week, but that she was absent from the home frequently and sometimes for several days at a time. He testified further that he required no security for the monies loaned to his sister, implying that such was not necessary because she was his sister; that he never expected his brother-in-law, Lovelace Naquin, to pay for the property and that he never talked to him about any proposed loan, and that before the family arrangements broke up in April, 1943, he never asked his sister nor her husband for any reimbursement. Plaintiff also contends that during the time that his sister and her husband lived in the family building, of which he owned the major undivided interest and in which he operated his grocery store, that no rent was paid by either her or her husband; that he not only furnished the major portion of the groceries for the family, but that he also furnished clothing to his sister and allowed her to use money from the store, and that all these items were more than sufficient to pay her for any services that she ever rendered.
In support of his contention that the monies advanced for the benefit of his sister were in the nature of a loan, plaintiff introduced the testimony of Mr. and Mrs. Alvin Domangue, to whom the property in question was rented for 17 months at $8 per month, to the effect that they were told to vacate the property by Mrs. Naquin, for the reason that she wanted to live in the house, and later in their testimony that the rental was insufficient to pay her brother for the house. Mrs. Domangue testified that she was not on speaking terms with Mrs. Naquin. It appears illogical to us that Mrs. Naquin should have told either Mr. or Mrs. Domangue that she was indebted to plaintiff. To the contrary, we are of the opinion that the real and only reason Mrs. Naquin desired the house was to live therein after the serious disagreement occurred between the plaintiff and defendants.
On behalf of defendant, Sidney Dupre, the vendor of the property, testified that plaintiff told him that he was going to buy the property for the length of time his sister had taken care of him, and upon being further interrogated, on that point, he stated, "The only thing he said, he was going to buy that to (for) her so that she could take care of him."
Mrs. Sidney Dupre testified that plaintiff made the statement that he was going to buy the place for Mrs. Lovelace Naquin "for her to take care of him, and she took care of him before." She states, after the sale: "When they came back, he said he had bought the place for her to take care of him." Mrs. Lovelace Naquin, according to her testimony, understood that the sale was made for past services, and although the statement testified to by Mrs. Dupre was made in her presence, she did not hear or understand that part with reference to future services. Counsel for plaintiff lays great stress on this inconsistency in the testimony with reference to the statement of plaintiff made to Mr. and Mrs. Naquin, that is, the apparent inconsistency as to whether the property was being purchased for past services or for future services, or for both; but the fact remains that these witnesses testified that plaintiff stated that the property was being purchased in the name of his sister because of services rendered him by her.
The defendant, Mrs. Naquin, testified that in November, 1933, she was living with her sister, Mrs. Paul Picou, and that her brother, the plaintiff, came to her and offered to pay her $25 a month if she would come live with him on the family property and would do his work and that she thereupon *Page 228 
went to live with her brother; that she married in March, 1934, and that her husband joined her on the family property; that thereafter the groceries for the family were furnished partly by her brother and partly by her husband; that besides the rent money from the property, she paid the light bill and gave her brother other monies; that this rent money and other payments of unstated amounts were made to him to assist him in taking care of the note on the property and to help in his business, and not for the purpose of paying him back for the property, because she felt that the property had been purchased in her name and for her to pay her for her services and that she never received any cash payments from him for services rendered.
The other defendant, Lovelace Naquin, testified very much to the same effect as his wife, stating that he paid his share of the family expense, including repair bills to the building in which they resided; that he was engaged in trapping and other work which took him away a great deal of the time; but that his wife stayed there at all times, and cooked, washed, and kept house for her brother, and clerked in the store, for which she was paid nothing.
Miss Rena Picou, a niece of plaintiff and his defendant sister, was placed on the stand as a rebuttal witness, for plaintiff, and testified that she lived with them some three years and that during this time Mrs. Naquin did the cooking; that the meats used by the family were purchased from Autin's meat market and were paid for by the Naquins; that some groceries were furnished by plaintiff, but that she was told by Mrs. Naquin that when they took anything out of the store, she had to pay for it.
The Notary, Mr. Funderburk, who passed the sale, was not called by either of the parties, for the reason that he had no recollection of what was said at the time of the execution of the act of sale, and Mrs. Paul Picou (the sister with whom Mrs. Naquin was living at the time that she was supposed to have been employed by plaintiff) was summoned by plaintiff, but was not called because she had no recollection of anything concerning this property.
[3, 4] It is a familiar rule that where witnesses differ, their testimony must be considered in the light of their interest in the case and of its probability and consistency with the surrounding circumstances. When tested by this rule, we must come to the conclusion that plaintiff has not borne the burden of proof. To hold otherwise, we would have to completely disregard the testimony of the only two disinterested and unbiased witnesses, Mr. and Mrs. Dupre, which we cannot do.
[5] Furthermore, were we of the opinion that the plaintiff had borne the burden of proof, we are satisfied that defendants have amply proved that the services rendered to plaintiff by Mrs. Naquin during the 108 months when plaintiff lived with the defendants were fully worth the amount plaintiff claims he loaned to his sister, thus being a discharge of the obligation, if any existed.
[6] Counsel for plaintiff contends that since the testimony is irreconcilable, and the question of "who to believe" and proper weight to give to the testimony determined, we should not reverse the trial court's judgment on a question of facts, unless the judgment is manifestly erroneous. This Court is made the judge of facts, as well as law. Const.1921, art. 7, § 29. Where testimony is conflicting, this Court, in the exercise of its appellate jurisdiction, is bound to weigh it, as well as the court of original jurisdiction. And where this Court differs with the court below as to the weight of the testimony, we are not only empowered, but it is our duty to reverse the judgment. Not only do we differ with the lower court on the weight of the testimony of Mr. and Mrs. Dupre, but we also differ with him on the question as to who had the burden of proof in this case
For these reasons assigned, it is ordered that the judgment appealed from be annulled, reversed and set aside, and it is now ordered that plaintiff's suit be and the same is hereby dismissed at his costs in both courts. *Page 229