NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-51

WILLIAM KEITH REDMON

VERSUS

LEISHA LINDSEY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2016-3450-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

AFFIRMED.

**James Thompson Lee**
**P. O. Box 1021**
**Bunkie, LA 71322**
**(318) 346-6616**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Leisha Lindsey**

**Charles Riddle**
**Riddle & Donaghey**
**P. O. Box 608**
**Marksville, LA 71351**
**(318) 240-7217**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **William Keith Redmon**

**EZELL, Judge.**

William Keith Redmon appeals a trial court judgment denying his petition for payment of a debt he argues Leisha Lindsey owes him for the purchase of a Chevrolet Camaro. For the following reasons, we affirm the judgment of the trial court.

## FACTS

Mr. Redmon and Ms. Lindsey knew each other from high school. In 2015, they began seeing one another. Ms. Lindsey claims that she just wanted a friendship with Mr. Redmon, but Mr. Redmon wanted a more intimate relationship with her. They would often cook together and went camping a couple of times. During this time, Mr. Redmon gave Ms. Lindsey several gifts.

The many gifts included cash, a Judge pistol, a cruise package, a diamond necklace, a barbecue pit, a turkey fryer, fishing poles, a car shampooer, a camera, a chainsaw, drills, rocking chairs, a wood-burning stove, a freezer, and ceiling fans.

On November 4, 2015, Mr. Redmon arranged to throw a surprise birthday party for Ms. Lindsey at a Mexican restaurant in Bunkie. Three days after the party, Mr. Redmon purchased a diamond engagement ring and a 2010 yellow Chevrolet Camaro for Ms. Lindsey.

In previous discussions, Ms. Lindsey told Mr. Redmon about this particular Chevrolet Camaro she wanted from Vaughn Chevrolet in Lecompte. She emailed the dealership in October inquiring about the vehicle. Mr. Redmon purchased the car on November 7, 2015. Ms. Lindsey testified that Mr. Redmon attempted to get her driver's license information for the purchase by text, but she would not give it to him. Initially, the car was titled in Mr. Redmon's name. Ms. Lindsey then went

with him to pick up the car, and title to the car was placed in both of their names. On November 9, 2015, Ms. Lindsey secured insurance on the car in her name only.

Ms. Lindsey never wore the engagement ring, and the relationship began to sour. In January 2016, Ms. Lindsey sought to terminate the relationship. Eventually Mr. Redmon wanted the gifts back that he had given Ms. Lindsey. Everything was returned except for a few items. Ms. Lindsey also kept the Camaro.

Title to the car was placed solely in Ms. Lindsey's name on January 14, 2016. At that time, Ms. Lindsey wrote a check to Mr. Redmon in the amount of $1,000 as payment for the car. Ms. Lindsey testified that she began paying Mr. Redmon for the car because she did not feel comfortable receiving such an extravagant gift. Ms. Lindsey continued to make payments to Mr. Redmon in the amount of $200 by wire transfer on January 27, February 10, March 21, April 7, April 21, and May 5. Ms. Lindsey stopped making payments to Mr. Redmon because he would not quit harassing her and had even called her father threatening to have her arrested and threatening to file suit against her.

On August 23, 2016, Mr. Redmon filed a petition to pay debt against Ms. Lindsey for $20,600. Mr. Redmon claimed that he financed the vehicle for Ms. Lindsey and she owed him money for the Camaro, which she refused to pay. Ms. Lindsey answered the petition claiming that the car was a gift from Mr. Redmon, so she did not owe him any money. Trial on the matter was held on August 11, 2017.

In written reasons for judgment, the trial court ruled in favor of Ms. Lindsey stating:

In the case at bar, plaintiff has failed to support his assertion of Defendant's obligation to repay with supporting documentation, such as evidence of a denied loan application for the car, any testimony by loan officers of Defendant's attempt to finance the car on her own, etc. Plaintiff has failed to provide proof, other than his own self-serving testimony, of an oral contract to repay.

Therefore, based upon the facts of this proceeding and applicable law, plaintiff has failed to prove, more probable than not, that the defendant is indebted to him. Accordingly, plaintiff's Petition to Repay Debt is dismissed at his costs.

Judgment was signed on September 5, 2017. Mr. Redmon then filed the present appeal to this court.

## LOAN OR DONATION

Mr. Redmon claims the trial court erred in basing its ruling on repayment of a debt. Mr. Redmon argues that the issue is whether there was an irrevocable donation of the Camaro, and it was Ms. Lindsey's burden to establish that it was. Ms. Lindsey argues that Mr. Redmon never raised the issue of donation in the trial court and raises it for the first time on appeal. Regardless, she argues that the car was donated to her and that the donation was complete and irrevocable on November 7, 2015.

The finding by a trial court of whether a donation or a loan occurred is a finding subject to the manifest error standard of review. *Baker v. Baker*, 09-507 (La.App. 3 Cir. 11/4/09), 27 So.3d 958, *writ denied*, 09-2640 (La. 2/12/10), 27 So.3d 850.

"A party who demands performance of an obligation must prove the existence of the obligation." La.Civ.Code art. 1831. When a plaintiff seeks to recover money lent to a defendant, who claims the transaction was a gift, and the defendant denies owing any money to the plaintiff, the burden rests upon the

plaintiff to establish that the transaction was a loan. *Authement v. Naquin*, 26

So.2d 224 (La.App. 1 Cir. 1946).

When a writing is not required by law and a contract for a value is more than

$500, "the contract must be proved by at least one witness and other corroborating

circumstances." La.Civ.Code art. 1846.

> To meet the burden of proving an oral contract by a witness and other corroborating circumstances, a party may serve as his own witness and the "other corroborating circumstances" may be general and need not prove every detail of the plaintiffs [sic] case. However, the corroborating circumstances that are required must come from a source other than the plaintiff. *Pennington Construction, Inc.* [ *v. RA Eagle Corp.*,94-575 (La.App. 1 Cir. 3/3/95)], 652 So.2d [637] at 639.

> Furthermore, the existence or non-existence of a contract is a question of fact, and the trial court's determination of this issue will not be disturbed unless manifestly erroneous or clearly wrong. *Townsend v. Urie*, 00–0730, p. 6 (La.App. 1 Cir. 5/11/01), 800 So.2d 11, 15, *writ denied*, 01–1678 (La.9/21/01), 797 So.2d 674. Similarly, the issue of whether there were corroborating circumstances sufficient to establish an oral contract is a question of fact. *Pennington Construction, Inc. v.RA Eagle Corp.*, 94–0575 (La.App. 1 Cir. 3/3/95), 652 So.2d 637, 639. Moreover, when evaluating the evidence needed to establish the existence or non-existence of a contract, the trial court is allowed to make credibility determinations. *Imperial Chemicals Limited v. PKB Scania (USA), Inc.*, 04–2742 (La.App. 1 Cir. 2/22/06), 929 So.2d 84, 93, *writ denied*, 06–0665 (La.5/26/06), 930 So.2d 31.

*Rich v. Jurasin*, 12-159, p. 2 (La.App. 1 Cir. 11/2/12) (unpublished opinion).

The trial court specifically made the following findings of fact:

> The evidence submitted in the form of Redmon's testimony and the text messages introduced into evidence conclusively confirm that this vehicle was purchased by Redmon specifically for Lindsey without any plans whatsoever for Lindsey to pay any debt. Redmon contends that there were discussions about repayment and even a legal document signed concerning repayment, however, this evidence is totally unsubstantiated. At some point later there were discussions wherein Lindsey indicated she would make arrangements to pay for the vehicle by May of 2016 even if this money would be borrowed from her step dad [sic]. This again was not corroborated by any other evidence. The text messages introduced into evidence indicate clearly that Redmon intended for the car to be a gift to Lindsey, although the evidence is quite clear that Redmon expected a romantic relationship

4

in return. When this did not occur, it is clear that the relationship soured and Redmon's plans concerning the vehicle changed. Redmon confirmed that had he and Lindsey married, he would have never expected to be repaid and was unsure of same if the relationship simply became a permanent but non-marital relationship.

. . . .

. . . . The evidence submitted is undisputed that Redmon purchased the vehicle with the intent for Lindsey to own the vehicle. The purchase of the vehicle was clearly a gift to Lindsey. . . .

. . . .

. . . . There is no evidence to support any claim by Plaintiff that he offered to finance the car for Defendant (as a loan), nor that the Defendant accepted this offer with the intent to repay Plaintiff for purchase of car at the time the car was obtained. The facts, evidence, and testimony adduced at trial show that Plaintiff intended to purchase the car as a birthday "gift" for Defendant, and that no offer, acceptance, or consent of the parties to enter into a contract to repay were present at the time the car was purchased. To the contrary, it wasn't until at the termination of the relationship that Plaintiff insisted that his purchase of the car was as a loan, not a gift, and only after this time, did Defendant make any payments based on her own conscience – **not based on any legal obligation to repay.**

We first observe that Mr. Redmon's petition sought payment of a debt for the purchase of the car. No mention was made of an irrevocable donation. Ms. Lindsey raised the issue of donation in her answer when she alleged that that the Camaro was a gift. The trial court was correct in addressing the issue of whether Ms. Lindsey agreed to pay Mr. Redmon for the car and it was his burden to establish that the transaction was a loan.

In supporting his argument that he loaned money to Ms. Lindsey, Mr. Redmon testified that he tried to go to Union Bank to help Ms. Lindsey get financing for the car, but Union Bank would not approve it, so he paid for the car himself. Ms. Lindsey stated that she had no idea that Mr. Redmon went to the bank until he testified at trial. In her deposition, Ms. Lindsey testified that she had

just paid off the loan of another vehicle at Union Bank, so she knew she could get financing for the new car there. Mr. Redmon also insisted that they were going to sign paperwork agreeing that Ms. Lindsey pay him for the vehicle, but there is no writing in evidence indicating this.

Clearly, the testimony of the two parties differed, and the trial court made credibility decisions. We find no manifest error in the trial court's finding that there was no agreement between Mr. Redmon and Ms. Lindsey concerning a loan to help Ms. Lindsey pay for the car. There is also no indication that she agreed to pay him back for the car.

We also find no manifest error in the trial court's conclusion that the car was a gift from Mr. Redmon to Ms. Lindsey as opposed to a loan.

Louisiana Civil Code Article 1543 provides "[t]he donation inter vivos of a corporeal movable also may be made by delivery of the ting to the donee without any other formality."

> In order to show that a manual gift was made, there must exist strong and convincing proof that a donor had the intent to irrevocably divest himself of a thing and that delivery was made. The donee has the burden of proving donative intent, which is a factual issue. Important in proving a manual donation are the donor's outward acts, together with any admissible evidence of the relationship of the parties. The determination of the existence of donative intent is subject to the manifest error standard of appellate review. *Terrell, supra.*

*Cimino v. Capps*, 48,122, 48,123 p. 3 (La.App. 2 Cir. 6/26/13), 117 So.3d 573, 575-76 (citations omitted).

As noted by the trial court, there are text messages from Mr. Redmon to Ms. Lindsey indicating that the car was a gift. He agreed to sign the car over to her even if she did not want a relationship with him. When he requested a return of items he had given her, the car was not in the list. Mr. Redmon did not demand

payment for the car until Ms. Lindsey continued to refuse to give into his demands to engage in a romantic relationship. Furthermore, Ms. Lindsey's sister and adult son testified that Mr. Redmon told them he was going to buy the car as a gift for Ms. Lindsey.

Although Ms. Lindsey began making payments for the car, this does not negate the fact that the car was a gift. The donation of the car was effective when Mr. Redmon placed it into the possession of Ms. Lindsey in November. La.Civ.Code art. 1544. Ms. Lindsey testified that she began making payments to Mr. Redmon because she felt it was the right thing to do since it was such an extravagant gift. There is no evidence that the parties contemplated and agreed that Ms. Lindsey would pay for the car, other than Mr. Redmon's own self-serving testimony. We also find that there was no evidence of any reason to revoke the donation of the car. La.Civ.Code art. 1556.

For these reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed to William Keith Redmon.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2-16.3.