**NOT FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2024 CA 0500

STEPHEN W. BINNING AND KRISTEN BINNING

VERSUS

JERRY BOUDINOT CONSTRUCTION, LLC, ALL STATE
PLASTERING, INC., PENN AMERICA INSURANCE COMPANY
AND XYZ INSURANCE COMPANY

Judgment Rendered: DEC 3 0 2024

* * * * *

On Appeal from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 593235

Honorable Kelly Balfour, Judge Presiding

* * * * *

Roy H. Maughan, Jr.
Namisha D. Patel
Joshua D. Roy
Connor S. Thomas
Baton Rouge, LA

Attorneys for Plaintiff in
Reconvention-Appellant,
Robert Digirolamo


Richard D. Bankston
Abbey S. Knight
Baton Rouge, LA

Attorneys for Defendant in
Reconvention-Appellee,
Stephen W. Binning


Brian J. Prendergast
Baton Rouge, LA

Attorney for Defendant in
Reconvention-Appellee,
Kristen Binning


David C. Bolton
Baton Rouge, LA

Attorney for Defendant in
Reconvention-Appellee,
Deborah A. Berthelot

* * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

**HESTER, J.**

This is an appeal from a trial court judgment dismissing with prejudice all claims asserted by plaintiff in reconvention on motions for involuntary dismissal during a bench trial. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On August 4, 2010, Stephen and Kristen Binning (sometimes collectively referred to as the "Binnings") through their attorney, Deborah Berthelot ("Berthelot"), filed suit against Jerry Boudinot Construction ("Boudinot"), All State Plastering, Inc. ("All State"), and multiple insurers after discovering several soft, rotten sections in the exterior walls of their home apparently caused by moisture trapped under the stucco that had not been sealed properly, which affected 75% of the structure of the Binnings' home.[1] The cost for the repair of the complete failure of the stucco system of the home was estimated to be $65,000.00.

According to the Binnings, the contract with Boudinot was for the construction of their custom dream home with each feature being carefully selected to enhance their family life with their children. The damages to the home were extensive and required emergency repairs to stop water intrusion, resulting in the walls being torn down and exposing rot and mold behind the exterior finish. According to a certified moisture specialist and certified building envelope inspector, "the original stucco installation was faulty and lead [sic] to significant physical damage of the stucco, underlying wood substrate, flashings, vapor retarder and structural framing members," and "the home started leaking immediately after completion of the stucco cladding system."

---

[1] Boudinot was dismissed from the suit. See **Binning v. Boudinot**, 2011-1091 (La. App. 1st Cir. 12/21/11), 2011 WL 6779597 (unreported) (affirming the trial court's judgment sustaining Boudinot's exception raising the objection of peremption and dismissing the Binning's claims against Boudinot with prejudice). Thereafter, the insurers were dismissed.

During this time, the entire family was affected. Kristen was prescribed anti-anxiety medication, and the Binnings started marriage counseling. The Binnings eventually separated, never reconciled, and obtained a judgment of divorce on August 5, 2015.

After filing an answer on May 25, 2011, on behalf of All State, All State's counsel filed a motion to withdraw as counsel of record "due to the continued failure of the client to respond to Mover after repeated unsuccessful attempts in which to contact the client ... ." All State's counsel was permitted to withdraw by order dated June 11, 2013.

On January 15, 2014, the Binnings amended their petition to add Robert Digirolamo, the sole shareholder of All State, as a defendant in his individual capacity. The Binnings alleged that Digirolamo was the "owner, sole shareholder, employee and only person who applied stucco to the Binning home," and that Digirolamo's work was substandard, failing to comply with either required industry standards or the applicable building standards.[2] Ultimately, on September 3, 2014, the Binnings filed a motion for appointment of a curator, maintaining that Digirolamo and All State (for whom Digirolamo is the registered agent for service of process) were absentees from East Baton Rouge Parish and evading service. The trial court appointed a curator, who filed an answer on behalf of Digirolamo and All State, and was relieved as curator after completing her duties.

On April 28, 2016, the Binnings moved for summary judgment against Digirolamo and All State, requesting service on the former curator. Realizing the error, the Binnings again moved to have a curator appointed to represent the absent defendants, Digirolamo and All State. The trial court appointed a curator, who filed a "[r]esponse" to the Binnings' motion for summary judgment. The response

_____

[2] According to documentation from the Louisiana State Licensing Board for Contractors, neither Digirolamo nor All State were ever licensed contractors.

indicated that the curator's attempts to contact defendants were unsuccessful and, consequently, that Digirolamo and All State did not oppose the motion for summary judgment. The trial court granted the motion for summary judgment, rendering a money judgment in favor of the Binnings and against Digirolamo and All State on February 27, 2017.

On June 11, 2017, Berthelot sent letters to the East Baton Rouge Parish Clerk of Court (the "Clerk") requesting issuance of writs of *fieri facias* in order to execute on the February 27, 2017 judgment in favor of the Binnings. Thereafter, the Clerk issued writs of *fieri facias* to the sheriffs of East Baton Rouge Parish and Plaquemines Parish on July 19, 2017 and July 21, 2017, respectively, commanding the seizure and sale of Digirolamo and All State's immovable property.[3] The sheriff of East Baton Rouge Parish seized two parcels of immovable property on July 21, 2017, and set the date for the sheriff's sale. While the Clerk transmitted the writs of *fieri facias* and supporting documentation to the sheriff of Plaquemines Parish on July 21, 2017, requesting that the writ be executed and served, the record does not contain a notice of seizure, which would show that the sheriff seized the parcel of immovable property in Plaquemines Parish.[4]

On November 6, 2017, counsel for Digirolamo, Roy H. Maughan, Jr. ("Maughan"), transmitted correspondence to Berthelot, informing her that a review of the record indicated that "a procedural error was committed, which makes the [February 27, 2017] judgment invalid," specifically questioning service of the

---

[3] According to DiGirolamo, one of the properties in East Baton Rouge Parish was a commercial building, while the other was a residence he owned with his former wife, who occupied the property as her primary domicile. The property in Plaquemines Parish was DiGirolamo's primary residence.

[4] A notice of seizure filed and recorded in Plaquemines Parish on January 1, 2018, is referenced as being an exhibit to the nullity judgment dated January 3, 2019, yet no exhibit is attached to the judgment. Additionally, on January 16, 2018 and February 20, 2018, The Plaquemines Gazette contained public notices for the sheriff's sale of DiGirolamo's parcel of immovable property, indicating that the sheriff was proceeding to sell the property "[b]y virtue and in obedience to a WRIT OF FIERI FACIAS directed to [the sheriff] by the ... Twenty-Fifth Judicial District Court in and for the Parish of Plaquemines, dated OCTOBER 21, 2017 ..."

Binnings' amended petition on Digirolamo through the sheriff. Thereafter, Digirolamo filed a "Motion and Incorporated Memorandum for Recognition of Homestead Exemption" relative to the property in Plaquemines Parish.[5] The trial court granted the motion in a judgment signed on January 31, 2018, decreeing that the Plaquemines Parish property constituted the homestead of Digirolamo and was "exempt from seizure in the amount of $35,000.00, exclusive of costs of sale" and further ordering that the amount of $35,000.00 be retained and set aside for Digirolamo if the property was auctioned. According to Digirolamo, the sheriff's sale was reset for February 21, 2018, but was eventually stopped.

On August 9, 2018, Digirolamo and All State through their counsel, Maughan, filed a "Declinatory Exception of Insufficiency of Service of Process and Motion for Summary Judgment Annulling the Judgment Rendered February 27, 2017," seeking to annul the February 27, 2017 judgment granting the Binnings' motion for summary judgment.[6] The Binnings opposed the exception and motion. After a hearing on December 3, 2018, the trial court granted the motion.[7] The trial court signed a judgment on January 3, 2019, annulling the February 27, 2017 judgment pursuant to La. Code Civ. P. art. 2002 and cancelling the inscriptions of the February 27, 2017 judgment and the notices of seizure in East Baton Rouge Parish and Plaquemines Parish.

---

[5] Berthelot filed an opposition to the motion, arguing that Digirolamo rented out the property in Plaquemines Parish and also claimed a homestead exemption on the residential property in East Baton Rouge Parish. Berthelot noted that she never received the motion and only received notice of the hearing from the trial court. She attempted to contact Maughan on December 1, 2017, and left a message with his office, informing him that her office had moved and of the failure to receive the motion. Berthelot also requested that the motion be transmitted to her. As of the date the opposition was transmitted to the court on December 29, 2017, Berthelot had not received a copy of the motion and Maughan had not returned her call.

[6] All State's second counsel of record withdrew on May 12, 2016, "due to a conflict."

[7] In his brief filed with this court, Digirolamo references a suit to annul filed by Maughan on April 10, 2018, and a copy of such suit was introduced as an exhibit at trial; however, the suit to annul is not otherwise contained in the record. No order was attached to the suit, requesting that the matter be set for hearing. Notwithstanding, the minutes of court and the trial court's judgment annulling the February 27, 2017 judgment only reference Digirolamo and All State's motion for summary judgment.

On February 20, 2019, Digirolamo filed a reconventional demand against the Binnings and a third-party demand against Berthelot, alleging damages resulting from the wrongful seizure of Digirolamo's property "due to the acts of Defendants in Reconvention and their attorney, Berthelot."[8] Digirolamo alleged the seizures were "intentional, malicious and/or in bad faith, and at the least negligent."

Stephen and Kristen Binning each answered the reconventional demand, denying the allegations contained therein. Berthelot filed a peremptory exception asserting the objection of no cause of action, maintaining that she owed no duty to Digirolamo, that the third-party demand failed to state a cause of action for intentional tort, and that at all relevant times she was operating as a limited liability company (Deborah Berthelot, LLC). The trial court sustained the exceptions but allowed Digirolamo the opportunity to amend the third-party demand. On October 23, 2020, Digirolamo filed an amended third-party demand, providing additional allegations relative to the intentional tort claims against Berthelot, to wit:

- Berthelot was required to have the legal knowledge, skill, thoroughness, and preparation reasonably necessary;

- Berthelot knew or should have known that the trial court's jurisdiction over Digirolamo required service of process on him or an attorney appointed to defend him;

- Berthelot knew or should have known that any judgment rendered against Digirolamo was absolutely null;

- Berthelot knew or should have known that she did not request service of process on him or an attorney appointed to defend him;

- Berthelot was made aware of the lack of service on Digirolamo, which was a verifiable fact evident from the record of the proceeding;

---

[8] We note that Digirolamo's reconventional and third-party demands were filed nineteen months after the writs of *fieri facias* were issued.

- Berthelot demonstrated a blatant disregard for Digirolamo's rights of procedural due process in instituting proceedings to collect on an absolutely null judgment;

- Berthelot's conduct and actions in attempting enforcement of an absolutely null judgment were intentional because they were deliberate and calculated;

- Berthelot's failure to cease collection activities after being apprised of the service of process issue showed calculated misconduct in violation of the law; and

- Berthelot had a professional and legal duty not to intentionally injure or violate Digirolamo's legal rights and rights of procedural due process.

As a result of the alleged intentional acts of Berthelot, Digirolamo alleged he suffered embarrassment, humiliation, mental anguish, worry, mental trauma, depression, and inconvenience and sought compensation for such damages as well as attorney's fees and costs.

Ultimately, Digirolamo's reconventional and third-party demands against the Binnings and Berthelot, respectively, proceeded to a bench trial on December 13, 2023. The trial court received documentary evidence and heard testimony given by Digirolamo and Berthelot. At the conclusion of Digirolamo's case, Stephen and Kristen Binning and Berthelot moved for involuntary dismissal, arguing that Digirolamo did not carry his burden of proof on his claims against the defendants and, further, that he failed to prove compensable damages. Ultimately, the trial court granted all three motions for involuntary dismissal, ordering that costs be split amongst all the parties. The judgment memorializing the trial court's ruling was signed on January 2, 2024.

Digirolamo appealed, assigning as error the trial court's grant of Stephen and Kristen Binning's and Berthelot's motions for involuntary dismissal; determination

7

that Digirolamo failed to prove his case-in-chief; failure to award damages to Digirolamo; and dismissal of Digirolamo's claims with prejudice.[9]

## LAW AND DISCUSSION

Louisiana Code of Civil Procedure article 1672(B) provides that in an action tried by the court without a jury, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for involuntary dismissal at the close of plaintiff's case on the ground that upon the facts and law, plaintiff has shown no right to relief. In determining whether involuntary dismissal should be granted, the appropriate standard is whether the plaintiff has presented sufficient evidence in his case-in-chief to establish a claim by a preponderance of the evidence, which means taking the evidence as a whole, the fact or cause sought to be proved is more probable than not. **Key Office Equip., Inc. v. Zachary Cmty. Sch. Bd.,** 2015-1412 (La. App. 1st Cir. 4/15/16), 195 So.3d 54, 59, writ denied, 2016-0841 (La. 6/17/16), 192 So.3d 772.

The trial court's grant of an involuntary dismissal is subject to the manifest error standard of review. **Broussard v. Voorhies,** 2006-2306 (La. App. 1st Cir. 9/19/07), 970 So.2d 1038, 1041, writ denied, 2007-2052 (La. 12/14/07), 970 So.2d 535. In order to reverse a grant of involuntary dismissal, an appellate court must find, after reviewing the record, that there is no factual basis for the trial court's finding or that the finding is clearly wrong. **Id**. at 1042. See also **Stobart v. State through Dep't of Transp. & Dev.,** 617 So.2d 880, 882 (La. 1993). The issue to be resolved is not whether the trial court was right or wrong, but whether its conclusion

---

[9] Digirolamo also assigned as error the trial court's consideration and determination that the claims against Berthelot were prescribed, noting that the trial court "ostensibly raised the exception of prescription on its own motion, and found ... Digirolamo's claims ... untimely." Initially, we note that the trial court could not and did not supply the objection of prescription on its own. La. Code Civ. P. art. 927(B). Moreover, the judgment appealed did not contain any determination that Digirolamo's claims were prescribed. Appellate courts review judgments and not reasons for judgment. **Tucker v. Chatfield,** 2023-0343 (La. App. 1st Cir. 11/9/23), 379 So.3d 678, 683. In fact, judgments are often upheld on appeal for reasons different than those assigned by a trial court. **Id**. at 684. Accordingly, we pretermit discussion of this assignment of error.

was a reasonable one. **Pontchartrain Nat. Gas Sys. v. Texas Brine Co., LLC,** 2018-0631 (La. App. 1st Cir. 7/3/19), 281 So.3d 1, 5, writ denied, 2019-01423 (La. 11/12/19), 282 So.3d 224 (relying on **Stobart,** 617 So.2d at 882). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the trial court's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. **Stobart,** 617 So.2d at 882.

Because an involuntary dismissal of an action pursuant to La. Code Civ. P. art. 1672(B) is based on the facts and law, a review of the substantive law applicable to Digirolamo's case is necessary. **Pontchartrain Nat. Gas Sys.,** 281 So.3d at 5. Here, Digirolamo asserted a claim for damages for wrongful seizure and intentional tort.

## Wrongful Seizure

The cause of action for damages for wrongful seizure is a tort claim based on La. Civ. Code art. 2315. **Tchefuncte Harbour Townhome Ass'n, Inc. v. Costanza,** 2015-0524 (La. App. 1st Cir. 11/6/15), 2015 WL 6842117 *4 (unpublished) (relying on **Grocery Supply Co. v. Winterton Food Stores,** 31,114 (La. App. 2d Cir. 12/9/98), 722 So.2d 94, 97). In order for a plaintiff to prevail under La. Civ. Code art. 2315 for wrongful seizure, he must first prove that the seizure was illegal or wrongful. **Taylor v. Hancock Bank of Louisiana,** 95-0666 (La. App. 1 Cir. 11/9/95), 665 So.2d 5, 7. In order to recover damages therefor, the damages must have been caused by the fault of another; there must be a duty owed by the

9

defendant to the plaintiff; a breach of this duty; and causation.[10] **Id.** A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. **Lemann v. Essen Lane Daiquiris, Inc.**, 2005-1095 (La. 3/10/06), 923 So.2d 627, 633. "Fault" as used in La. Civ. Code art. 2315 encompasses more than negligence. It is the breach of a duty owed by one party to another under particular facts and circumstances of a given case. **Taylor**, 665 So.2d at 7. Recoverable damages for the tort of wrongful seizure can include damages in compensation for embarrassment, humiliation, mental anguish, and worry. **Id.**

A writ of *fieri facias* is a method of execution of a money judgment in which the property of the judgment debtor is seized and sold. See La. Code Civ. P. art. 2291. The rules and procedures governing writs of *fieri facias* are set forth in articles 2291 *et seq.* of the Louisiana Civil Code of Procedure, Book IV entitled "Execution of Judgments." An essential requirement to the issuance of a writ of *fieri facias* is a money judgment. **King v. Illinois Nat. Ins. Co.**, 2008-1491 (La. 4/3/09), 9 So.3d 780, 786. Pursuant to La. Code Civ. P. art. 2291, a judgment for the payment of money may be executed by a writ of *fieri facias* directing the seizure and sale of property of the judgment debtor. The act of seizing through the execution of a judgment constitutes an involuntary relinquishment of a judgment debtor's interests. **King**, 9 So.3d at 787. Accordingly, strict construction and application of the provisions relating to writs of *fieri facias*, as with other provisions pertaining to the execution of judgments, are warranted. **Id.**

---

[10] See also **Mathieu v. Imperial Toy Corp.**, 94-0952 (La. 11/30/94), 646 So.2d 318, 322 (to state a claim under La. Civ. Code art. 2315, "a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).").

10

Digirolamo's sole basis for asserting the seizure was wrongful is the fact that the February 27, 2017 money judgment was declared absolutely null on January 3, 2019. An absolutely null judgment is never valid and any proceedings conducted under the authority of a null judgment are absolutely void. **Succession of Crute v. Crute**, 2016-0836 (La. App. 1st Cir. 8/30/17), 226 So.3d 1161, 1177-78. Accordingly, it is clear that the writs of *fieri facias* and the subsequent seizures of Digirolamo's property pursuant to the absolutely null judgment are void in this case. However, this court has stated that a judgment rendered absolutely null "is as though it were never rendered." **Frisard v. Autin**, 98-2637 (La. App. 1st Cir. 12/28/99), 747 So.2d 813, 820, <u>writ denied</u>, 2000-0126 (La. 3/17/00), 756 So.2d 1145. Mindful of the strict construction of the provisions relating to writs of *fieri facias*, we conclude that the seizure of Digirolamo's property under a writ of *fieri facias* issued as a result of the February 27, 2017 null judgment was wrongful.

However, a finding that the seizure was wrongful does not automatically entitle Digirolamo to recover damages. Rather, he was required to prove his case for damages under La. Civ. Code art. 2315. Digirolamo was required to prove that his damages were caused by the fault of another, which encompasses more than negligence. Digirolamo further had to prove by a preponderance of the evidence that Stephen and Kristen Binning or Berthelot breached a duty owed to him under the particular facts and circumstances of this case. <u>See</u> **Taylor**, 665 So.2d at 7. In granting Stephen and Kristen Binning and Berthelot's motions for involuntary dismissal, the trial court implicitly found that plaintiff failed to present sufficient evidence in his case-in-chief to establish his claim for damages for wrongful seizure by a preponderance of the evidence. After a thorough review of the record and evidence presented, we are unable to conclude that the trial court was manifestly erroneous. <u>See</u> **Broussard**, 970 So.2d at 1041.

11

Because the wrongful seizure in this case stems from the fact that the money judgment was rendered absolutely null, we find that, under the very particular facts and circumstances of this case, the Binnings themselves cannot be found to be the legal cause of the wrongful seizure. **Todd v. State Through Dep't of Soc. Servs., Office of Cmty. Servs.**, 96-3090 (La. 9/9/97), 699 So.2d 35, 39 ("Every negligence case must be decided on its own facts and circumstances."). Rather, it was the mistake and actions of their attorney, Berthelot, that caused the February 27, 2017 judgment to be declared absolutely null, *i.e.*, her failure to properly request service of all relevant petitions on Digirolamo. Accordingly, we find the trial court's conclusion was reasonable under the specific facts and circumstances of this case and that the trial court did not err in granting Stephen and Kristen Binnings' motions for involuntary dismissal.[11] See **Pontchartrain Nat. Gas Sys.**, 281 So.3d at 5.

## Intentional Tort

In **Penalber v. Blount**, 550 So.2d 577, 581 (La. 1989), the supreme court held that a non-client generally cannot hold his adversary's attorney personally liable for

---

[11] Moreover, we do not find any error in the trial court's ruling to the extent it concluded that Digirolamo failed to establish his damages by a preponderance of the evidence.

Digirolamo is not legally entitled to attorney's fees. Under Louisiana law, attorney's fees are not permitted except where authorized by statute or by contract. **Sigur v. Mun. Employees' Ret. Sys. of Louisiana**, 2021-0790 (La. App. 1st Cir. 3/4/22), 341 So.3d 632, 639, writ denied, 2022-00747 (La. 9/7/22), 345 So.3d 426. While statutory provisions permit the allowance of attorney's fees for the dissolution of improper seizures under writs of attachment or sequestration and the dissolution of a wrongful issuance of a restraining order or preliminary injunction, there is no statutory provision to recover attorney's fees for the dissolution of a wrongful seizure under a writ of *fieri facias*. See La. Code Civ. P. arts. 3506 and 3608; also see **Nassau Realty Co., Inc. v. Brown**, 332 So.2d 206, 210 (La. 1976). However, we note that La. Code Civ. P. art. 2298(A)(4), which was not utilized by Digirolamo in this case, permits injunctive relief prohibiting the sheriff from proceeding with the sale of property seized under a writ of *fieri facias* when the judgment sought to be executed is absolutely null. When injunctive relief pursuant to La. Code Civ. P. art. 2298(A) is granted, subsection B allows the court to award damages if it finds the seizure to be wrongful and further provides that attorney's fees may be included as an element of the damages.

Regarding Digirolamo's general damages, he testified on direct examination that he felt fear, embarrassment, and humiliation as a result of the attempt to seize his properties and the notice of seizure being published in an ad in the newspaper. Digirolamo also testified that in 2017, around the time of these proceedings, he saw his doctor and was prescribed medications, one of which included his medication for "ADHD" (Attention Deficit Hyperactive Disorder). However, Digirolamo's testimony was called into question on cross examination, and the trial court could have reasonably concluded that Digirolamo was not entitled to damages under the facts of this case.

either malpractice or negligent breach of a professional obligation. **Id**. The intent of this rule is not to reduce an attorney's responsibility for his or her work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of the loyalty owed to a client. Accordingly, Digirolamo was required to establish by a preponderance of the evidence that Berthelot's actions were intentionally tortious. See **Id**. at 582. The supreme court has held that in order to state a cause of action, facts must be alleged showing that the attorney acted with specific malice or an intent to cause direct harm. See **Montalvo v. Sondes**, 93-2813 (La. 5/23/94), 637 So.2d 127, 130.

Notwithstanding Digirolamo's allegations against Berthelot in his third-party demand, the testimony of Berthelot did not support the allegations that her actions were deliberate and calculated or that she knew the February 27, 2017 judgment was null or otherwise disregarded pertinent facts in requesting the writs of *fieri facias*. When questioned about the letter Maughan sent to Berthelot refencing a "procedural error" making the judgment invalid and questioning whether the sheriff in Plaquemines Parish was directed to make personal service on Digirolamo, Berthelot testified that she was confused as to what error Maughan referenced.[12] When asked if she understood the error now, she responded that she understood that the curators submitted an answer that was incorrectly numbered, not matching the paragraphs of the second amended petition naming Digirolamo, which was the error. When questioned about the citation, which only referenced service of the original petition (no reference was made to either of the amended petitions), Berthelot testified that she brought all three petitions to the Clerk's office and requested that they serve all

---

[12] Berthelot further testified that she did not trust Maughan, and that she "would look at the matter every two or three weeks to see if [Maughan] had filed something because [he] would not send [her] copies, [he] would not serve [her] and it was very difficult to know what [Maughan] was doing."

three.[13] She further testified that she could not "explain why they don't have every document that was on it. ... I think they didn't have enough space to type the name of each document that was being served in that little line."

Before granting Berthelot's motion for involuntary dismissal, the trial court observed:

> Now the threshold for competency that lawyers are held to under our rules of professional conduct clearly was not met here. I have law students in their first year that have a better grasp of civil procedure than what was displayed in this particular matter. It is clear that [Berthelot] doesn't know how to serve the suit, doesn't know the process of [how] to operate with curators and if you believe her testimony here today, still doesn't understand what went wrong in the original case in chief.

The trial court, however, did not find that any evidence was presented to show that Berthelot's actions were malicious or that there was an abuse of process. Based on the testimony and evidence, we do not find that the trial court was unreasonable or manifestly erroneous in granting Berthelot's motion for involuntary dismissal.

Accordingly, we do not find merit in any of Digirolamo's assignments of error.

## CONCLUSION

For the above and foregoing reasons, we affirm the January 2, 2024 judgment, granting the motions for involuntary dismissal of Stephen Binning, Kristen Binning, and Deborah Berthelot, dismissing Robert Digirolamo's claims against Stephen Binning, Kristen Binning, and Deborah Berthelot with prejudice, and ordering that costs be split equally amongst Robert Digirolamo, Stephen Binning, Kristen Binning, and Deborah Berthelot. Costs of this appeal are assessed to Robert Digirolamo.

**AFFIRMED.**

---

[13] We note that the service information in the second amended petition simply states, "**PRIVATE PROCESS SERVER: PLEASE SERVE: Robert Digirolamo, personally.**"

14